## MANGUM ELECTRIC CO. et al. v. BORDER et al.

No. 10814—Opinion Filed July 24, 1923.

Rehearing Denied Jan. 15, 1924.

Application for Leave to File Second Petition for Rehearing Denied Feb. 12, 1924.

(Syllabus.)

1. **Conspiracy—Damages as Gist of Action.**

In a civil action for damages instituted against members of a conspiracy, the gist of the action is the damages.

2. **Same—Definition of "Conspiracy".**

A conspiracy is a combination of two or more persons to do a criminal or unlawful act or to do a lawful act by criminal or unlawful means.

3. **Torts—Actionable "Malicious Wrong".**

The intentional doing of that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another, or that other person's property or trade, is actionable, if done without just cause or excuse. Such intentional action when done without just cause or excuse is what the law calls a "malicious wrong".

4. **Same—Infringement on Other's Rights.**

Any intentional act which in the ordinary course will infringe upon the right of another to his damage is wrongful, except it be done in the exercise of an equal or superior right.

5. **Same—"Malice".**

"Malice," in the law is the intentional doing of a wrongful act without justification or excuse.

6. **Conspiracy—Petition—Sufficiency.**

A petition alleging that the plaintiff was a physician, surgeon, and mayor of the

city, and certain of the defendants were the owners of an electric light plant in said city, and the plaintiff, as mayor, and the city council had called an election for the purpose of voting bonds to construct a municipal light plant, and the defendants conspired together for the purpose of injuring said plaintiff in his business and in his reputation, and bringing plaintiff in disrepute, for the purpose of defeating the bond issue, and the defendants in carrying out said conspiracy secured a pregnant woman and sought to induce the plaintiff to produce an abortion, and installed a dictograph in rooms in different hotels occupied by the said pregnant woman, and certain of defendants made certain statements imputing that plaintiff would produce an abortion, and the plaintiff, being advised of the defendants' act, caused the arrest of said defendants, and said acts became public, and the plaintiff suffered damages by reason thereof, held, said petition states a single cause of action for damages against the conspirators for a malicious wrong, and that the overt acts and statements made by the defendants were a part of the conspiracy and part of the overt acts calculated to injure plaintiff; held, further, the court did not err in overruling the various motions or demurrers to said petition.

### 7. Torts—Liability—Plaintiff Participating in Acts.

The general rule of law is that one cannot recover damages for an act in which he actively participated without being induced to do so by fraud or misrepresentations.

### 8. Appeal and Error—Prejudicial Error—Failure to Submit Theory of Defense.

Failure of the court, upon proper request of the defendant, to submit, by appropriate instructions, a theory of the defendants which is supported by evidence, constitutes prejudicial error.

### 9. Same—Action for Conspiracy.

Record examined, and held, the defendants having introduced evidence that the plaintiff, with full knowledge of the conspiracy and its plans, employed one of the persons actively engaged therein to aid and assist in carrying out the overt acts relied upon as a basis for damages, held, it was error for the trial court to refuse a requested instruction submitting this defense to the jury.

### 10. Torts—Liability of Tort-Feasors.

Tort-feasors are liable for the natural consequences that will probably result from their wrongful acts.

### 11. Conspiracy — Instructions — Action for Damages—Refusal of Requests by Defense.

Record examined, and held, there was no error in the court refusing to give requested instructions Nos. 6 and 7 requested by the defendants.

Error from District Court, Beckham County; Thomas A. Edwards, Judge.

Chas. Mitschrich, for plaintiffs in error.

A. M. Stewart and S. 1. McElhoes, for defendants in error.

Action by G. F. Border against the Mangum Electric Company and others for damages for conspiracy. Judgment for plaintiff, and certain defendants bring error. Reversed and remanded, with instructions.

McNEILL, J. This action was commenced by Dr. G. F. Border against the Mangum Electric Company, John C. Keys, and certain other defendants to recover damages for injury to his business, reputation, and health, and for exemplary damages. The allegations of the petition are substantially as follows: That Dr. Border, a regularly licensed and practicing physician, conducted a hospital at Mangum, Okla., and was mayor of said city. That on or about the 1st day of July, 1914, Doctor Border, as mayor, and the city council of Mangum called a special election to be held on the 4th day of August, 1914, in said city for the purpose of determining whether the city should issue bonds to install a municipal electric light and power plant. That the Southwestern Cities Electric Company and the Mangum Electric Company were the owners of a franchise in the city and were engaged in furnishing the city with electricity for light and power purposes. That John C. Keys was the duly elected president of the Southwestern Cities Electric Company and also president of the Mangum Electric Company; that E. W. McClintic was treasurer, and J. W. Chambers was the manager of the Mangum Electric Company; that C. P. Walker, Cy Williams, R. A. Baird, Dr. J. F. Campbell, and Julian Bond were acting agents and employes of the corporations. It was further alleged that John C. Keys, president of the Mangum Electric Company, E. W. McClintic, treasurer, and J. W. Chambers, the general manager, willfully and maliciously conspired together for the purpose of defaming, slandering, and destroying the good name and reputation of the plaintiff in his business, and as a physician and surgeon, and to injure his reputation as a public official, and thereby destroying his influence in favor of the bond issue aforesaid, and thus defeat the same. That said parties in carrying out said conspiracy employed the services of the William J. Burns International Detective

Agency, and through the other defendants above mentioned. who were informed of the conspiracy, and who agreed to aid and assist the defendant corporation and their officers in said conspiracy, secured a pregnant woman, to wit: Maude Marshall. and by unlawful means sought to induce plaintiff to perform a criminal operation, to wit. an abortion, upon said Maude Marshall. That in carrying out said conspiracy and in their attempt to have said plaintiff commit said abortion, the said Maude Marshall, R. A. Baird, Cy Williams, and B. V. Henson, the agent of the Burns Detective Agency, went to the town of Hobart and there registered at a hotel and installed a dictograph in the room of said Maude Marshall, and one of said parties telephoned to said plaintiff at Mangum, requesting him to come to Hobart to perform an operation, but said plaintiff refused to come to Hobart. That thereafter said Maude Marshall, said Baird, Williams, and Henson went to Altus, Okla., and there registered at a hotel, and installed a dictograph in their room. That R. A. Baird then went to Mangum to induce plaintiff to come to Altus for the purpose of performing an operation, but said plaintiff refused. That on or about the 24th day of July, 1914, the parties above mentioned, in carrying out their unlawful conspiracy, went to the city of Mangum, registered at a hotel and there installed a dictograph in the room of said Maude Marshall and again solicited the plaintiff to attend said Maude Marshall in the capacity of a physician for the purpose of performing an operation. That the plaintiff, believing the defendants had entered into a conspiracy, caused the arrest of said parties for conspiracy. That the dictograph was installed in the different rooms of said Maude Marshall for the purpose of overhearing and recording the conversation with reference to such criminal operation, with the intent to thereafter make said conversation public. and thereby injure plaintiff in his business, or threaten him to make the same public, unless he desisted from supporting the bond issue. That said J. W. Chambers, in carrying out said conspiracy, issued certain slanderous statements in the presence of Jim Sharpe, Marion Northcutt, C. P. Stubbs, and J. D. Carreathers. to wit:

"Dr. Border has been hallooing around long enough about that bond issue. He will be packing his grip and hiking to Europe pretty soon. The blackest scandal will come out here in a few days, that will shock this town, and outside money will be used to do it, and not Mangum money."

The petition alleges that said acts injured plaintiff in his business and profession, and prayed for damages.

No service was had on the Southwestern Cities Electric Company, and the case as to it was dismissed.

The defendants filed separate answers. A change of venue was granted from Greer county to Beckham county. The case was tried to a jury and a verdict returned in favor of the plaintiff and against the defendants S. B. Williams, R. A. Baird, B. V. Henson, C. P. Walker, Mangum Electric Company, John C. Keys, and J. W. Chambers for the sum of $12,000 for damages to the reputation and character and standing of plaintiff as a physician; $10,000 for mental anguish and pain; $20,000 for actual damages to plaintiff's business; $20,000 for exemplary damages, or a total of $62,000.

For reversal plaintiffs in error assign numerous assignments of error, among which are that the court erred in overruling the demurrer to the petition, and the motion to strike certain allegations from the petition, to wit, the allegations regarding defendants Baird, Henson, and Williams and Maude Marshall registering at the hotels and installing dictographs and soliciting the plaintiff to perform an operation upon Maude Marshall, and in refusing to require the plaintiff to elect as to which cause of action he would proceed to trial upon, as defendants contend that the petition alleges three separate and distinct causes of action, to wit: An action for damages resulting from the overt acts alleged to have occurred from conspiracy; second, an action for slanderous remarks alleged to have been made by J. W. Chambers; and third, an action for slanderous remarks alleged to have been made by C. P. Walker. It is further contended that the court erred in overruling the motion to require the plaintiff to separately state and number his several causes of action.

In considering the above assignments of error, it is necessary to first determine the kind and character of action, if any, that is stated in the petition. The defendants contend this is an action for damages for slander, while plaintiff contends this is an action for conspiracy. The acts complained of as a foundation for this action may be summarized to allege that the defendants willfully and maliciously sought to injure plaintiff in his official capacity by willful, malicious, and corrupt means. This is not an action for slander, but is an action to re-

cover damages against certain defendants for conspiring together to willfully and maliciously injure plaintiff in his profession and business without just cause or excuse.

The rule is well settled that in a civil action against members of a conspiracy for the recovery of damages the gist thereof is the damages, not the conspiracy. One of the leading cases upon this question is Martens et al. v. Reilly et al., 109 Wis. 464.

The first, second, and fourth paragraphs of the syllabus are as follows:

"(1) In a civil action for damages instituted against members of a conspiracy, the gist of the action is the damage; while in a criminal prosecution for the offense of conspiring, the gist of the action is the conspiracy.

"(2) A conspiracy is defined to be a combination of two or more persons to do a criminal or unlawful act, or to do a lawful act by criminal or unlawful means.

"(4) The gist of the civil action against conspirators being the damage, the general rule is that it will not lie against many acting in concert if it will not lie against one of them for the same act. Such rule does not apply to criminal actions."

See, also, Harbison v. White, 56 Okla. 566, 156 Pac. 335.

By application of the well-settled principle of law that in a civil action against conspirators the gist of the action is the damage, it necessarily follows that the damages arise, not from the conspiracy, but the overt acts in carrying out the conspiracy. A conspiracy is a combination of two or more persons to do some criminal or unlawful act, or a lawful act by criminal or unlawful means. The unlawful act contemplated by the conspiracy in the instant case was to injure the plaintiff in his business by false and fraudulent representations and by insinuation that he would perform an operation forbidden by law. We recall no case in this state that is precisely in point with the present case, nor is any cited from other jurisdictions. Upon examination of reported decisions in other jurisdiction, however, we find cases where the ultimate object sought to be obtained was the same, to wit, the intentional doing of those acts which are intended to, and in fact do damage another in his property or profession. Some of the cases define such intentional actions as malicious wrong.

A malicious wrong has been defined to be:

"The intentional doing of that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another, or that other person's property or trade, is actionable, if done without just cause or excuse. Such intentional action when done without just cause or excuse is what the law calls a malicious wrong."

See Brennan v. United Hatters of N. A. (N. J. App.) 65 Atl. 165, 9 L. R. A. (N S.) 254; Dunshee v. Standard Oil Co. (Iowa) 132 N. W. 371; Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 16 Ann. Cas. 807; May v. Wood (Mass.) 51 N. E. 191; Mahoney v. Roberts (Ark.) 110 S. W. 225; Palatine Ins. Co. v. Griffin (Tex. Civ. App.) 202 S. W. 1014; Schultz v. Frankfort, etc., Ins. Co. (Wis.) 139 N. W. 386.

In the case of Brennan v. United Hatters of N. A., it was said:

"A wrongful act * * * is any act which in the ordinary course will infringe upon the rights of another, to his damage, except it be done in the exercise of an equal or superior right."

It is a well-settled rule of law in this class and character of cases that malice is an essential ingredient in an action for damages, and malice is defined as follows:

" 'Malice,' in the law, is the intentional doing of a wrongful act without justification of excuse." Schonwald v. Ragains, 32 Okla. 223, 122 Pac. 203; London v. Horn, 206 Ill. 493, 69 N. E. 526; Palatine Ins. Co. v. Griffin, supra; Lamb v. Cheney & Sons, 227 N. Y. 418, 125 N. E. 817; King v. Patterson, 49 N. J. L. 418, 9 Atl. 705; McFadden v. Lane, 71 N. J. L. 624, 60 Atl. 365.

The allegations of the petition bring this case within the category of cases designated as actions for damages against members of a conspiracy for malicious wrong. The purpose sought to be accomplished by the conspiracy in the instant case was not to commit the crime of abortion, nor slander, but to injure plaintiff in his profession and official life. The end sought to be accomplished was wrongful, not only because as an incident thereby it involved the commission of a crime, but was unlawful because the purpose was to injure plaintiff in his business by false and fraudulent representations and insinuations, and without just cause or excuse. The petition does contain statements purported to have been made by two of the defendants, one of which might be considered slanderous per se, the other not slanderous per se, although it might be slanderous, but those were merely allegations of overt acts committed in carrying out the alleged conspiracy, and the means employed to damage the plaintiff. We therefore hold that the petition stated but a single cause of action, and the court did not err in overruling the various motions or demurrers.

Numerous errors are assigned regarding the instructions given and the refusal of

certain instructions requested. The refusal to give requested instruction No. 3 is the most serious, and we will consider that first. In considering this question it will be necessary to notice a portion of the evidence, or enough of the same to give us a general idea of the facts of the case. In regard to the conspiracy, it is sufficient to say there was sufficient evidence to submit the question of conspiracy to the jury. The evidence upon the part of the plaintiff discloses that Mrs. Mitchell was engaged by Mr. Williams, one of the alleged conspirators, to secure a girl that was pregnant and who would be willing to submit to an abortion. It was proposed that after the girl was obtained, Mrs. Mitchell was to disguise herself and represent to the plaintiff that she was the mother of the girl, and present a state of facts to plaintiff that would appeal to his sympathy and endeavor to induce him to commit the offense. She testified the defendants believed plaintiff would not commit the offense solely for a money consideration, but might be induced to do so if the purported mother would make a sympathetic appeal to the plaintiff. Mrs. Mitchell secured Maude Marshall, an unmarried woman, who represented she was pregnant, and was willing to submit to an operation. Maude Marshall had a friend by the name of Miss Fulsom, and the three women had a meeting here in Oklahoma City with Williams, and discussed the plans. That in addition to having the abortion committed on her, all of Miss Marshall's expenses were to be paid, and she was to receive $100. Mrs. Mitchell testified she thereafter refused to have anything further to do with the matter, telling the parties she believed they would all get into trouble. The evidence disclosed that the other parties, however, proceeded to carry out the purported plan, and Miss Fulsom was to represent that she was a married sister of Maude Marshall and she desired to have the abortion committed for the purpose of preventing their widowed mother and younger sisters from knowing said fact, and the disgrace that would naturally follow therefrom. The record disclosed that Miss Marshall and Miss Fulsom, for the purpose of carrying out said plan, left Oklahoma City in company with Walter Perry, and went to Chickasha, and were there joined by Cy Williams and R. A. Baird; from there the parties all went to Hobart, and from there to Altus, where they met Mr. Henson of the Burns Detective Association, where they secured rooms at a hotel, installed a dictograph in the room of Maude Marshall, employed a court reporter, and sent Baird to Mangum to induce the plaintiff to come to Altus. Baird was slightly acquainted with Dr. Border. He at one time had been a minister, and had called Dr. Border from Oklahoma City to perform an operation. In his conversation at Mangum with plaintiff he stated that under the circumstances it would be a Christian act to perform the operation. Plaintiff refused to go to Altus. The parties then came to Mangum, and registered at a hotel, and installed the dictograph, and plaintiff was again consulted, and agreed to come to the hotel to see Miss Marshall about 11 o'clock at night. The plaintiff went to the hotel earlier than expected, and met Baird, and was informed that things did not look good, and they would have to wait until morning. That plaintiff then had the parties all arrested for conspiracy.

The plaintiff testified he had been advised there was a frame-up by the electric light people to injure him with some women, but he was not advised of what the conspiracy consisted of. That he caused the arrest of the parties for the purpose of enforcing the law and having them prosecuted for conspiracy, and that they were prosecuted.

The defendants denied there was any conspiracy. John C. Keys and the Mangum Electric Company denied they had knowledge of any conspiracy, alleging if any of their employes engaged in the same or in the overt acts alleged, it was without their knowledge and consent, and without the scope of their agents' authority. As a further defense, Walter Perry was produced as a witness, who testified, in substance, that before any of the overt acts of the conspiracy had been carried out and before the parties had found any one who would agree to submit to an abortion, he met plaintiff in Moman Pruitt's office, and advised him of the scheme that was being attempted, and the full details of the scheme. That Cy Williams wanted witness to help him to get a girl who would have an abortion produced, and that a dictograph would be arranged so they could catch plaintiff. Witness testified plaintiff instructed that witness should go ahead with Cy Williams to help carry out the plans, and plaintiff would pay witness for his time and expense. That plaintiff at said meeting remarked if they would attempt to carry out their plans, it would be the best advertisement he could get, and he would sue the electric light company for $100,000 damage. Witness testified he consented to go on with the deal, but would not if he had not been requested to do so by the plaintiff, and

the plaintiff had agreed to pay him for his services, and he had a meeting in Oklahoma City with Williams, Maude Marshall, and Miss Fulsom, and that he left Oklahoma City in company with the women and R. A. Baird. That during the entire trip he had charge of the women. That at Mangum he advised Border of their plans, and Border advised him he had things arranged with his friends, and would have the whole bunch arrested that night. He was arrested with the others, but never placed in jail, was never prosecuted, nor sued in this action; that plaintiff paid him for all the time he was at Mangum.

One of the theories of the defense was that the overt acts in carrying out the conspiracy were all done with the knowledge and consent of the plaintiff, and plaintiff through Perry aided and abetted therein, and by reason of having actively participated in the overt acts, and invited the same, he could not profit by publication of the acts he invited and consented to. The defendants offered instruction No. 3, submitting this theory of their defense, which follows:

"You are instructed, gentlemen of the jury, that if you find from the evidence that before the conspiracy which was afterwards entered into between C. P. Walker, Cy Williams, R. A. Baird and other defendants, was planned, which conspiracy is set out and described in the plaintiff's petition, that the plaintiff, G. F. Border, had information that the said C. P. Walker and Cy Williams were about to conspire with others to procure the consent of the plaintiff, G. F. Border, to commit an abortion, and after having such information, the plaintiff, G. F. Border, having knowledge of the intention of said parties, in the respect herein indicated, employed one Walter T. Perry, who conveyed the information to him, to aid and abet in the formation of such conspiracy, and in its execution, for the purpose of leading the said conspirators on to the place where the said conspirators and the said Perry intended to execute the same and lead them to believe that he, Border, would participate therein, for the purpose and with the intent on the part of the said G. F. Border to have the parties arrested, and to publish to the world the frustration of the common design, and that acts done by the conspirators in pursuance of the unlawful conspiracy and to use the publication so brought about or invited by himself as the foundation of this suit, then your verdict in this case should be for the defendants, for the reason that the plaintiff cannot be permitted to profit by the publication of the thing that he invited and consented to and caused to be published and from which he claims to have been damaged."

The evidence of Perry tended to support the theory of the defense requested by this instruction, to wit: That plaintiff, through his agent and employe, Perry, had actively participated in the acts which he claimed damaged him. In the case of Moore v. Woodson (Tex. Civ. App.) 116 S. W. 608, the third paragraph of the syllabus is as follows:

"One cannot recover damages for an act in which he actively participated, without being induced to do so by fraud or misrepresentation." See, also, Hiller v. Ladd, 85 Fed. 703; 38 Cyc. 529.

In 25 Cyc. 370, under Libel and Slander, it is stated:

"If plaintiff consented to or authorized the publication of the complaint, he cannot recover for any injury sustained by reason of the publication."

The evidence of the defendants was sufficient to authorize the court to submit this theory of the defense, to wit: That the plaintiff had voluntarily and actively participated in, and aided and abetted in doing the overt acts which are the basis of this action with full knowledge of the conspiracy and in order that he might maintain this action. The court gave no instruction covering this theory of the defense. The plaintiff in answer to this proposition of law cites no authorities, but contends this defense was embraced in instruction No. 6 given by the court. The portion that is relied upon is as follows:

"But, in this connection, you are instructed that the plaintiff would not be entitled to recover for any damage sustained by reason of acts done by himself or for any damage for acts caused by him to be done by said defendants or any one of them, if such you find."

We do not think the instruction covers the defense presented.

There was testimony that prior to the time the defendants were arrested they had abandoned the conspiracy, and there would have been no publicity of the overt acts if the plaintiff had not caused the arrest of the defendants, and it was urged by reason of that fact plaintiff could not recover. The instruction given by the court perhaps covers that theory of the defense, but it in no way advised the jury if the plaintiff actively participated in the overt acts, with full knowledge of the conspiracy, or aided and abetted therein and assisted in the overt acts, he could not recover.

This court in a long line of decisions has announced the following rule:

"Failure of the court, upon proper request of a defendant, to submit, by appropriate instructions, a theory of the defense which is supported by evidence, constitutes prejudicial error."

See Eccleston v. Edens, 50 Okla. 237, 150 Pac. 882; also Mountcastle v. Miller, 66 Okla. 40, 166 Pac. 1057, A., T. & S. F. Ry. Co. v. Jamison, 46 Okla. 609, 149 Pac. 195, Ingraham v. Byers, 50 Okla. 463, 150 Pac. 905, Spurrier Lumber Co. v. Dodson, 30 Okla. 412, 120 Pac. 934, and Leach v. Hepler, 32 Okla. 729, 124 Pac. 68. We, therefore, conclude it was reversible error for the court to refuse the instruction, and the same cannot be considered harmless error.

The defendants also complain of the court refusing to give numerous other requested instructions. In view of the fact that we have concluded the case must be reversed, we will only refer to the propositions embraced in two of these requested instructions. Requested instruction No. 6, in substance, advised the jury that if it was necessary for those engaged in the conspiracy to secure the co-operation of the plaintiff, and without his consent the object of the conspiracy would have failed, or would have been abandoned, then the plaintiff could not prevail. We think there was no error in refusing to give this requested instruction. The requested instruction is based upon the assumption that the object of the conspiracy was to commit an abortion. This assumption is erroneous. The object of the conspiracy was to injure the plaintiff in his business and occupation. The commission of an abortion was one of the means sought to obtain this object. One of the overt acts to be done in carrying out the conspiracy was to place a dictograph in the room where the plaintiff would visit his patient. The placing of a dictograph in a room where the physician is expected to visit a patient, when done without just cause or excuse, is wrongful. The fact that parties attempt to secure information by such means has a tendency to reflect upon the honor and integrity of the person so shadowed. The natural and ordinary conclusion to be drawn by the general public when informed that a dictograph is being used to record a conversation between a physician and his patient is that the physician is engaging in some unprofessional or illegal conduct.

In the case of Schultz v. Frankfort Marine, Accident & Plate Glass Ins. Co. (Wis.) 139 N. W. 386, on page 390, it is stated:

"It must be conceded that to publicly proclaim one suspect, to publicly charge that he deserves watching, and that he is being followed and watched does subject him to public disrepute, ridicule, and contempt."

If we apply the same principle to the undisputed facts, it must likewise be conceded that where six persons, one of whom is a detective, representing the Burns International Detective Agency, go to a hotel and register and install a dictograph, and thereafter go to a hotel in another county and install a dictograph for the purpose of recording a conversation between a certain doctor and his patient, and said facts became known, such would subject the doctor to public disrepute, ridicule, and contempt.

It might be contended, under this proposition, that the acts of placing the dictograph in the different rooms and the employment of a detective to operate the same were not made public by the defendants, but were done in secret, and therefore they are not liable. The general rule is:

"That tort-feasors are liable for the natural consequences that will probably result from their wrongful acts."

It cannot be said that a person who enters into a conspiracy to injure a party's reputation, and one of the means employed is to induce the party to commit a crime and seek to obtain proof of said fact by use of a dictograph, cannot anticipate that he will not be arrested and all of said acts made public. The arrest of the parties is a possible consequence that must be anticipated.

Requested instruction No. 7, was to the effect that if the object of the conspiracy was to secure the plaintiff to produce an abortion upon a woman who at the time was not pregnant with child, then said conspiracy was an agreement to do an impossible act, and in that case plaintiff could not recover. There was no error in refusing to give this instruction. We think it was immaterial whether Maude Marshall was pregnant or not. The object of the conspiracy was to maliciously injure the plaintiff in his profession. The gist of an action for conspiracy is the damages resulting from the unlawful and malicious overt acts. The damages do not result from the fact of the woman being pregnant, but result from the imputation that the plaintiff would commit the offense. This might be a defense in a criminal case, but is immaterial in this kind of an action, and is no defense.

We think there is no other question that requires the consideration of the court or is necessary for the court to consider, as we

feel the court should have no trouble upon a second trial in properly submitting the case to the jury in accordance with the views herein expressed.

For the reasons stated, the judgment of the court is reversed, and the cause remanded, with instructions to grant the plaintiffs in error a new trial.

KENNAMER, NICHOLSON, COCHRAN, and MASON, JJ., concur.