Daryl **ROGERS,**
**Appellee/Counter Appellant,**

v.

**WELLTECH, INC.,**
**Appellant/Counter Appellee.**

No. 72305.

Court of Appeals of Oklahoma,
Division 1.

March 5, 1991.

Rehearing Denied May 14, 1991.

Certiorari Denied July 26, 1991.

Lew Gravitt, Oklahoma City, for appellee/counter appellant.

Curtis L. Smith, Oklahoma City, for appellant/counter appellee.

MEMORANDUM OPINION

ADAMS, Presiding Judge:

Welltech seeks reversal and a new trial, or, in the alternative, remittitur of an $82,841.00 judgment entered after a jury found in favor of Rogers on his retaliatory discharge claim under 85 O.S.1981 § 5. Among other allegations of error, Welltech asserts the refusal of certain jury instructions and the giving of others requires reversal. Welltech also claims Rogers failed to sustain his burden of proof at trial, and that the trial court should have directed a verdict in favor of Welltech.

In his counter-appeal, Rogers alleges the trial court erred in failing to submit the issue of punitive damages to the jury and in denying reinstatement to his former position. Welltech claims the counter-appeal is untimely and should be dismissed. As we find the counter-appeal timely, see 12 O.S.Supp.1984 § 990.1 and Rule 1.18, Rules of Appellate Procedure in Civil Cases, dismissal is denied.

■ Welltech argues Rogers did not establish a *prima facie* case for retaliatory discharge, and therefore the trial court erred in submitting the case to jury. In *Buckner v. General Motors*, 760 P.2d 803 (Okla.1988), the Oklahoma Supreme Court defined the elements of this *prima facie* case, requiring the employee to demonstrate (1) employment, (2) on-the-job injury, (3) medical treatment putting employer on notice or good faith institution of Workers' Compensation proceedings, and (4) *consequent* termination. It is the last element which Welltech contends Rogers did not prove.

In discussing this last element, *Buckner* states at page 810:

... the employee must offer evidence which would establish circumstances giving rise to a legal inference that the discharge was significantly motivated by retaliation for the exercise of statutory rights; ...

■ Rogers testified about a conversation with Welltech's regional safety and personel supervisor which occurred after his injury, medical treatment, his consultation with a lawyer about his Worker's Com-

**536**

pensation claim, and release to full duty by the physician. According to Rogers, the supervisor suggested Rogers should fire his lawyer and accept benefits based upon the disability rating made by the physician selected by Welltech. After Rogers indicated he would not do so, the supervisor warned him there was not a lot of work in Elk City, Rogers' normal work site, and Welltech could "get tough" if Rogers "kept pushing". According to Rogers, the supervisor also warned him not to try to find work with Welltech at the yard where Rogers' father was in charge.

After this conversation, Rogers reported for work at Welltech's Elk City yard. According to Rogers, Welltech's area manager requested him to report to work daily, but never sent him out on a job. When Rogers asked the manager if he was going to put Rogers back to work, Rogers testified the manager told him "he didn't think they were going to let me go back to work." When Rogers asked, "Who is they?", the manager replied, "Well, just leave it at that." After this conversation, Rogers was never called back to work, and in April, 1987, he was terminated as being physically unable to perform employment duties. The termination was made effective July 1, 1986, the day after his conversation with Welltech's safety and personnel supervisor.

Even though this evidence was controverted, reasonable people could conclude Welltech's failure to return Rogers to its work force and its ultimate termination of his employment were significantly motivated by a desire to retaliate against Rogers because he would not "go with Welltech" on his Workers' Compensation claim. The trial court correctly concluded Rogers had established a *prima facie* case under *Buckner*. Although we hold the trial acted properly by submitting this case to the jury, whether the jury was properly instructed requires further analysis.

■ The test on review of instructions given or refused is whether there is a probability the jury was misled to the prejudice of the complaining party, *Wilkerson Motor Co., Inc. v. Johnson*, 580 P.2d 505 (Okla. 1978), or a proper issue was excluded from the jury's consideration. *Woodall v. Chan-*

*dler Material Co.*, 716 P.2d 652 (Okla. 1986). Under these standards, this judgment must be reversed.

■ Despite Welltech's request, the trial court gave no instruction on causation. Using the statutory language, the trial court told the jury Welltech was responsible for all damages suffered by Rogers which "resulted" from the retaliatory discharge. The instructions did not otherwise define "resulted", or give any guidance to the jury in how to determine whether a item of damage legally "resulted" from, or was directly caused by, Welltech's action. This problem was exacerbated by Rogers' claim that his inability to obtain two subsequent jobs were due to "bad references" from Welltech. If such damage incurred, it is apparent it was caused not by the discharge itself, but by subsequent actions by Welltech not within the purview of this statutory cause of action. Although Rogers argues the "direct cause" instruction embodied in OUJI–CIV 9.6, the instruction requested by Welltech, applies only to negligence, he cites no authority that damages for this statutory tort, unlike other torts, are not limited to those "directly caused" by the act of the tortfeasor. See e.g., *Del State Bank v. Salmon*, 548 P.2d 1024, 1026 (Okla.1976); *Mangum Electric Co. v. Border*, 101 Okla. 64, 222 P. 1002 (1924). Absent such authority, we will assume the Legislature intended such an ordinary meaning when it used the term "resulted" in 85 O.S.Supp.1986 § 6. *Hess v. Excise Board of McCurtain County*, 698 P.2d 930 (Okla.1985).

■ Welltech also correctly contends Instruction 2, which paraphrases *Buckner* and describes the burden of proof, shifting of burdens, burden of persuasion, and burden of production of evidence, is misleading. The instruction asks the jury to determine whether Rogers made a prima facie case, and if so whether Welltech produced evidence the discharge was for a legitimate non-retaliatory reason. The jury is then asked to determine whether Welltech's evidence raised a "genuine issue of fact" concerning its reasons for the discharge. These questions are legal issues properly decided by the court, not factual issues for jury determination.

While *Buckner* is a clear exposition of the shifting burdens of persuasion and production which arise in these cases, its clarity depends upon an understanding of the appropriate functions of burdens of proof, prima facie cases, and burdens of production of evidence, an understanding which most jurors will not have. *Buckner*'s discussion of the order and burdens of proof in retaliatory discharge cases was intended to guide trial courts in determining whether employees and employers have produced sufficient evidence to allow submission of the case to the jury. The jury's function is to determine whether the employee has sustained his ultimate burden of proving retaliatory discharge. Although the instruction repeats *Buckner*'s caveat that the ultimate burden is on the employee, the earlier discussion so obscures this essential jury question, we cannot see how any jury could properly determine whether that burden had been met.

■ Although we reverse for new trial, two issues raised by Rogers' counter-appeal must be addressed to avoid possible repetition of error. Rogers contends the trial court should have submitted the question of punitive damages to the jury. We agree. As the Oklahoma Supreme Court noted in *Webb v. Dayton Tire and Rubber Company*, 697 P.2d 519 (Okla.1985), in the absence of the deterrent effect of punitive damages, there is little to dissuade employers from discharging employees in retaliation for the exercise of their statutory rights.

We are persuaded the court in *Williams v. ABS Enterprises, Inc.*, 734 P.2d 854, 856 (Okla.App.1987) was correct in noting:

[I]f there is sufficient evidence to send the case to the jury for a determination of actual damages the trial court must instruct on punitive damages. Inherent in the concept of retaliation is an intent to inflict injury in return for injury.

Whether this particular case presented "appropriate circumstances" warranting the award of punitive damages was a fact question for the jury. *Webb v. Dayton Tire and Rubber Company*, 697 P.2d at 523. It was error to exclude this issue from the jury's consideration.

In addition, Rogers claims he was entitled to reinstatement under 85 O.S.Supp. 1986 § 6. As part of the penalty to be assessed for retaliatory discharge, section 6 provides the employee "*shall* be entitled to be reinstated to his former position" (emphasis added). Although there may be grounds for denying reinstatement, see e.g., *Marshall v. TRW, Inc., et al.*, 900 F.2d 1517 (10th Cir.1990), this record did not address any. In the event Rogers is successful on retrial and seeks reinstatement, the trial court must address this issue on articulated grounds, including whether any damages awarded included loss of future income.

The judgment of the trial court is reversed, and this case is remanded for new trial on all issues in accordance with the views expressed.

REVERSED AND REMANDED FOR NEW TRIAL.

BAILEY and MacGUIGAN, JJ., concur.