Jerry D. PETTIT, Plaintiff/Appellee,

v.

**DOLESE BROTHERS CO.,**
Defendant/Appellant.

No. 87040.

Court of Civil Appeals of Oklahoma,
Division No. 3.

May 5, 1997.

Certiorari Denied July 9, 1997.

Peter T. Van Dyke, Sam R. Fulkerson, Oklahoma City, for Defendant/Appellant.

Darryl F. Roberts, Ardmore, for Plaintiff/Appellee.

## MEMORANDUM OPINION

CARL B. JONES, Presiding Judge.

¶ 1 Plaintiff/Appellee Jerry Pettit filed this action against his former employer, Defendant/Appellant Dolese Brothers Company [Dolese], alleging Dolese fired him from his job at the Dolese quarry in Davis, Oklahoma, in violation of 85 O.S.Supp.1994 § 5. Section 5 provides a cause of action in favor of any

employee who is fired because he "has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to. be instituted, in good faith, any proceeding under the provisions of [Title 85], or has testified or is about to testify in any such proceeding,"[1] and in favor of an employee who is discharged "during a period of temporary total disability solely on the basis of absence from work."[2] The trial court entered judgment in Pettit's favor after a jury verdict that he was entitled to actual damages of $120,000 actual damages and $80,000 punitive damages.

¶ 2 Dolese contends the trial court misdirected the jury about the proper allocation of burdens of going forward and of persuasion, and that the court's instructions are inconsistent with the burden-shifting scheme described in *Buckner v. General Motors Corp.*, 760 P.2d 803 (Okla.1988). The *Buckner* scheme requires the plaintiff in a retaliatory discharge action to establish a *prima facie* case first,[3] after which the burden of going forward with evidence shifts to the defendant. The defendant must then present evidence that the plaintiff was discharged for "a legitimate non-retaliatory reason." *Buckner*, 760 P.2d at 806. A legitimate reason may be either that the plaintiff was not able to perform his assigned duties, or that he pursued his workers' compensation claim in bad faith. *Id.*, 760 P.2d at 806–07. The defendant does not bear the ultimate burden of persuasion; its burden is only to produce evidence rebutting the plaintiff's evidence of retaliatory discharge. "The employer's burden is a *burden of production of relevant and credible evidence,* not a burden of persuasion." *Id.*, 760 P.2d at 807 (emphasis added).

 ¶ 3 Whether a plaintiff has proved a *prima facie* case, whether an employer has rebutted the plaintiff's case with evidence of a legitimate non-retaliatory basis for discharge, and whether the employer's rebuttal

has created a "genuine issue of fact" are all questions for the trial court to decide. *Rogers v. Welltech, Inc.*, 813 P.2d 534, 536 (Okla. App.1991), *cert. denied.* The burden-shifting scheme described in *Buckner* was meant to be an aid to the *trial court,* in determining whether a given case should be submitted to the jury. *Rogers,* 813 P.2d at 537. Once those preliminary questions are resolved, the jury must then decide whether the plaintiff has proved each of the requisite elements of his claim by a preponderance of the evidence. *Id.* The trial court need not, and *should not,* give a specific jury instruction setting out the *Buckner* burden-shifting scheme.

 ¶ 4 Dolese also contends that the instructions given to the jury erroneously placed a burden of persuasion on Dolese which it ought not have borne. The trial court gave a general "statement of the case" instruction consistent with the uniform instruction, and stated in part that Pettit "claims that he was discharged from his employment with the Defendant, Dolese, in retaliation for filing a workers' compensation claim," and that Dolese "claims that its decision to terminate [Pettit] was not the result of a workers' compensation claim ..." The instruction also states, "The Plaintiff denies the claims of the Defendant." The trial court's instruction on burden of proof similarly conformed to the uniform instruction and stated in part, "A party who seeks to recover on a claim, or a party who raises an affirmative defense has the burden to prove all the elements of the claim of defense."

¶ 5 Dolese concedes that each of these instructions, standing alone, was correct. But, it argues that use of *both* instructions created a hopeless and prejudicial contradiction between the use of the word "claims" in the statement of the case instruction and use of the word "claim" in the burden of proof instruction. We do not agree. The instructions given are uniform instructions

**1.** 85 O.S.Supp.1995 § 5(A)(1).

**2.** *Id.,* § 5(A)(2).

**3.** The elements of a *prima facie* retaliatory discharge claim are (1) employment, (2) injury while engaged in the employment, (3) receipt of treatment under circumstances which should put

the employer on notice that such treatment was rendered for the employment-related injury, or initiation (commencement or preparation to commence) of proceedings under the Workers' Compensation Act, and (4) consequent termination of employment. *Buckner,* 760 P.2d at 806.

used in every civil trial. Dolese's argument relies upon a strained construction. If this Court accepted the logic of Dolese's argument, we would condemn the use *in any case* of a general statement of case instruction and a general burden of proof instruction, unless the defendant actually had a "claim." The Court rejects Dolese's argument on this point.

¶ 6 Dolese next complains about evidentiary rulings by the trial court which, it contends, "further tainted" the proceedings below. Dolese complains that the trial court should not have admitted evidence of other Dolese employees' injuries and workers' compensation claims, or evidence of investigation by the federal Mine Safety and Health Administration, or the testimony of the plant supervisor, Melvyn Collins.

¶ 7 Pettit elicited testimony from Collins and another employee that they had been injured on the job at Dolese. Dolese objected to Collins testimony on the grounds of relevance because it occurred in 1972. The objection was overruled. Collins then said that he did not file a workers' compensation claim because "[a]t the time you could be terminated if you filed a compensation." [*sic* ] White testified that he had been employed at the Davis quarry for seven or eight years when, in January, 1993, he was hurt while at work. He related, "As soon as I notified the Dolese Davis quarry that I talked to an attorney and he agreed to handle my workman's comp case for me, then they quit talking to me. And the next response was a certified letter in the mail that said I was terminated."

¶ 8 The plaintiff in a § 5 retaliatory discharge action, in addition to the elements establishing a prima facie case, must prove that the decision to discharge him from his employment was significantly motivated by his commencement or preparation to commence a workers' compensation claim. Pettit cites *Wallace v. Halliburton Co.*, 850 P.2d 1056 (Okla.1993), and *Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607 (Okla.App. 1994), *cert. denied*, as authority which allows evidence unrelated to the presentation or handling of a retaliatory discharge plaintiff's own workers' compensation claim. In *Wal-*

*lace*, the court heard testimony from the plaintiff and another employee that they refrained from filing workers' compensation claims after suffering work-related injuries; and from an employee from a different plant testified that his supervisor became angry when he said he was going to file a compensation claim. There was also evidence that the plaintiff and another employee worried they might be fired if they filed claims. And, plaintiff offered evidence about other, less qualified employees who were not fired (who also had not filed workers' compensation claims). *Wallace*, 850 P.2d at 1059. In *Taylor*, the court affirmed a judgment for the employer because there was no evidence from which to infer that the plaintiff's termination was significantly motivated by workers' compensation proceedings. The court noted an absence of any testimony such as would show a pattern of terminating employees who pressed such claims, or evidence of pressure on employees not to file claims.

¶ 9 The court concludes that the trial court did not abuse its discretion in finding the evidence challenged by Dolese was relevant to the question of pattern or pressure, i.e. it was relevant to the issue of *significant motivation* which is a necessary element of a retaliatory discharge case.

¶ 10 Dolese also complains of evidence relating to the Mine Safety and Health Administration, which it contends Pettit interjected into the proceedings solely to prejudice Dolese. Dolese objected after Pettit testified he was concerned after talking to MSHA investigators on two occasions about his accident. "Because that's another don't, you don't talk to MSHA." Dolese contends such evidence was irrelevant because Pettit dismissed the count he originally pressed against Dolese for violation of federal mine safety statutes. We disagree. In the context of this case, evidence relating to the MSHA was relevant when offered by Pettit to show enmity of Dolese to contact between its employees and investigating authorities. There was testimony from other witnesses that Dolese tried to find out what its employees had discussed with investigators. Other evidence about MSHA came in because it was used on cross-examination of a Dolese

officer who said he did not know the specifics of employee White's case (that instance was the one which led MSHA to issue an administrative citation to Dolese). Both parties mentioned MSHA in their closing arguments. And, on some occasions the reference to MSHA came in without objection from Dolese (once elicited by defense counsel on cross-examination of Pettit). After review of the record and the arguments by Dolese, we see no merit to its assertions of unfair and undue prejudice.

¶ 11 On the first day of trial, Dolese moved to strike Melvyn Collins from being a witness. Dolese argued that it had tried to depose Collins the week before, and that Pettit's attorney refused to allow Collins to be deposed unless Dolese guaranteed that the corporate representative present would be the same corporate representative at trial. When defense counsel tried to ask some preliminary questions of Collins, counsel for Pettit left the deposition with Pettit and Collins.[4]

¶ 12 This contention is without merit because, as the trial transcript shows, Dolese acknowledged that Collins was made available again for a deposition the day before trial, but Dolese's attorney called to say that Dolese was no longer interested in taking Collins' deposition. Counsel for Dolese did not deny that account of events. While we agree with Dolese that the rule of sequestration does not apply in discovery depositions, *see Pryor Automotive Supply, Inc. v. Estate of Edwards,* 815 P.2d 202, 204 (Okla.App. 1991), citing *BCI Communication Systems, Inc. v. Bell Atlanticom Systems, Inc.,* 112 F.R.D. 154, 159 (N.D.Ala.1986), Dolese does not have any basis for complaining that it could not depose Collins before trial when it was offered a second chance to depose him and declined the offer.

¶ 13 None of the other evidentiary challenges by Dolese warrant much comment. Dolese contends Collins should not have been allowed to testify because his testimony was used only to inflame and unfairly prejudice the jury against Dolese. We have previously discussed some of Collins' testimony. Dolese also argues that the cumulative effect of the trial court's evidentiary rulings, even if no one of them standing alone would require reversal, must cause this court to overturn the judgment of the trial court. We do not agree.

¶ 14 Dolese's next proposition concerns the trial court's handling of so-called "prospective relief." Dolese argues that the trial court should not have let the jury decide the issues of prospective relief, and should not have instructed on both species of prospective relief—"front pay" and reinstatement. Here, the trial court submitted an interrogatory to the jury asking them to decide whether "there was hostility between [Pettit] and Defendant, Dolese, management on November 20, 1995, such that Plaintiff could not return to work." [5]

¶ 15 Section 6 of title 85 provides that for violating the retaliatory discharge statute, a party "shall be liable for reasonable damages, actual and punitive if applicable ..." The discharged employee is entitled to be reinstated to his former position. Although there is no specific reference in § 6 to "front pay" (future wages awarded in lieu of reinstatement), this Court has previously endorsed an award of front pay if there is evidence of such hostility between the plaintiff and the employer as to render reinstatement inappropriate. *See Mantha v. Liquid Carbonic Indus., Inc.,* 839 P.2d 200, 205 (Okla.App.1992), *cert. denied,*[6] citing *Marshall v. TRW, Inc.,* 900 F.2d 1517, 1522–23 (10th Cir.1990). Reinstatement is the preferred remedy. *Marshall,* 900 F.2d at 1522 (discussing § 6). An award of front pay is properly measured by the difference between what the plaintiff would have earned and the amount he actually earned, for a specific period of time in the future. *Mantha,* 839 P.2d at 205.

¶ 16 Dolese argues there was insufficient evidence of Dolese's hostility to Pettit to

---

**4.** Counsel for Pettit stated during the deposition that he also represented Collins.

**5.** The November, 1995, date is when Dolese offered to reinstate Pettit to his former position. Pettit declined the offer.

**6.** As pointed out in *Mantha,* the hostility must be something more than what may be reasonably expected after the plaintiff was fired. *Mantha,* 839 P.2d at 205.

justify submission of the alternative remedy of front pay to the jury. Dolese relies on *Marshall, supra,* that there must be "extreme hostility" between the employer and a former employee before front pay can be awarded. *Marshall,* 900 F.2d at 1522 n. 4, citing *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n,* 763 F.2d 1166, 1172–73 (10th Cir.), *cert. denied sub nom., Prudential Federal Sav. & Loan Ass'n v. E.E.O.C.,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). We read *Marshall* as stating in essence the same as we have previously said in *Mantha,* that there must be some more hostility shown by the plaintiff than what reasonably results from his termination.

¶ 17 The jury in this case was properly instructed to decide whether there was some hostility between Dolese and Pettit which would effectively preclude Pettit from returning to work, and only then to award future damages. The jury unanimously decided that Dolese remained hostile to Pettit, and so elected to award Pettit future damages in lieu of reinstatement. There does not appear any basis in the record, or in the arguments advanced by Dolese, for setting aside the jury's findings.

¶ 18 Dolese candidly acknowledges that there is a split of authority in the federal circuit courts about whether front pay in employment discrimination actions is an issue to be considered by the trial court as a matter of equity, or a legal issue which ought to be submitted to the jury. *See Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1426–27 (10th Cir.1991). Even if we decided that federal employment discrimination case law should be followed in deciding how to characterize questions of prospective relief under our retaliatory discharge statute (which we are disinclined to do), we should not necessarily follow the cases which Dolese commends for our attention. There is no authority in Oklahoma to suggest that issues of prospective relief are solely for the trial court to decide because they are equitable in nature. Quite to the contrary, it seems that the question whether an employer is so hostile to a former employee, so far beyond what may result from the employee's discharge that the remedy of reinstatement is not appropriate, is more a matter for the jury to decide upon proper instruction after hearing the evidence which the discharged employee and the employer are allowed to place before them.

¶ 19 Dolese also contends that the trial court should have made some preliminary finding of hostility in the workplace before letting the jury decide the issue of front pay. Dolese cites *Blim v. Western Elec. Co.,* 731 F.2d 1473 (10th Cir.), *cert. denied sub nom., A.T. & T Technologies v. Blim,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984), and other federal age discrimination cases in support of that argument. Pettit responds that Oklahoma courts have not wholly adopted federal anti-discrimination cases as guides for applying our retaliatory discharge statutes. *See Buckner v. General Motors Corp.,* 760 P.2d 803, 806 (Okla.1989) (limited use of federal antidiscrimination case principles does not signal wholesale adoption and application of federal employment discrimination law in retaliatory discharge cases); *see also Mosley v. Truckstops Corp. of Amer.,* 891 P.2d 577, 583 (Okla.1993).

¶ 20 Although it would doubtless be more helpful to an appellate court on review for the trial court to make a specific finding of workplace hostility on the record before submitting front pay damages to the jury, there is no cause for reversal in this case because the trial court did not do so. The evidentiary record at trial speaks for itself. As Pettit points out, there was evidence that he was pressured to return to work, that if he returned to work he would have been "on point," meaning he would have been closely watched for any transgression of Dolese policies, and suggesting that Dolese altered one of the personnel documents in Pettit's file in order to support its decision to fire him. The trial court asked the jury by interrogatory to make a preliminary determination of workplace hostility. Had the jury answered that question in the negative, clearly it would have been the trial court's duty to order Pettit reinstated to his former position. Since we have chosen not to read all of federal employment discrimination law into actions under the retaliatory discharge statute, we decline to overlay standards from federal age discrimination cases upon the jurisprudence which has developed under §§ 5 and 6.

¶ 21 Last, Dolese contends that the jury's verdict fixing actual and punitive damages must be reversed. Dolese cites several cases in which, it says, courts "have not hesitated to rule in favor of employers ... when the evidence failed to show that the termination was 'significantly motivated' by retaliation for filing the workers' compensation claim." [7] Dolese relies for reversal in part upon the evidentiary challenges which we have previously discussed and rejected, in the absence of which evidence it contends there was no basis for the jury's damage verdict or the trial court judgment entered thereupon. Since we have rejected Dolese's evidentiary challenges, there is no merit to its challenge to the jury's determination of actual damages.

¶ 22 We next consider Dolese's contentions regarding punitive damages. Dolese argues in the last paragraph of its brief in chief that the jury award of punitive damages must be set aside, and that the trial court improperly lifted the statutory cap on punitive damages. Since the jury did not award punitive damages greater than actual damages, Pettit argues that any alleged error about lifting the cap is moot. We agree. Dolese also contends that the correctness of the jury's award of punitive damages should be measured by reference to the punitive damage statute in force when Pettit filed his lawsuit on June 15, 1995, and not according to the amended statute effective in August, 1995.[8]

¶ 23 In *Majors v. Good*, 832 P.2d 420 (Okla.1992), a wrongful death case, the court held that an amendment to the punitive damage statute should be applied prospectively only. *Majors*, 832 P.2d at 422. The question presented by Dolese is whether, under the earlier version of the punitive damage statute, the trial court ought to have made a specific finding on the record, outside of the hearing of the jury, that Dolese was guilty of conduct "evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actually or presumed," before allowing the jury to determine the quantum of exemplary damages.

¶ 24 Statutes and their amendments are presumed to operate prospectively unless the Legislature has manifested its intention to make them effective retroactively. In this case, the trial court stated on the record that a reasonable juror could find that Dolese's conduct was wanton, reckless, oppressive, or malicious, and so lifted the punitive damage cap. The trial court thus complied with the statute then in force.

¶ 25 None of the grounds argued by Dolese on appeal show why the judgment entered upon the jury's verdict should be set aside. The trial court's judgment is therefore affirmed.

AFFIRMED.

GARRETT, J., dissents.

ADAMS, C.J., concurs.

---

7. Citing *Bishop v. Hale–Halsell Co.*, 800 P.2d 232, 234–5 (Okla.1990); *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463–64 (Okla.1987); and *Taylor*, 891 P.2d at 610.

8. The Legislature repealed § 9 in 1995 and substituted in its place a new statute, 23 O.S.Supp. 1995 § 9.1. Okla.Sess.Laws 1995, c. 287, § 2.