2007 OK CIV APP 23

**Phillip ESTRADA, Plaintiff/Appellant,**

v.

**PORT CITY PROPERTIES, INC., d/b/a Hodges Warehouse, Defendant/Appellee.**

**No. 102,834.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 23, 2007.

---

Robert V. Seacat, Seacat & Seacat, Okmulgee, OK, for Appellant.

Kenneth L. Brune, David L. Messer, Brune Law Firm, Tulsa, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Phillip Estrada (Plaintiff) seeks review of the trial court's order granting the demurrer to the evidence/motion for directed verdict of Defendant/Appellee Port City Properties, Inc., d/b/a Hodges Warehouse (Defendant), on Plaintiff's claim for wrongful, retaliatory termination of his employment. In this appeal, Plaintiff asserts he presented evidence establishing a prima facie case for recovery. Having reviewed the record, we agree. The order of the trial court is accordingly reversed, and the cause remanded for further proceedings.

¶ 2 Plaintiff commenced the instant action in November 2003, seeking recovery of damages as a result of Defendant's alleged wrongful termination of his employment in retaliation for his hiring of an attorney and pursuit of a workers' compensation claim. Defendant denied retaliatory motive.

¶ 3 At trial over two days in October 2005, Plaintiff testified that he suffered a job-related injury to his left ankle in January 2003, that he received payments from Defendant's workers' compensation insurance carrier for temporary total disability (TTD) during his absence from work, and that he returned to work for Defendant in March 2003 upon release by his treating physician. Plaintiff continued to experience pain in his left ankle, and Defendant's workers' compensation insurance carrier referred him to a different physician for examination. The new physician found Plaintiff again TTD, and Plaintiff subsequently submitted to surgery for repair of a ruptured ligament.

¶ 4 During this second period of TTD, Plaintiff consulted an attorney, and in April 2003, Plaintiff, by and through his attorney, filed a Form 3, Employee's First Notice of Injury and Claim for Compensation, in the

Workers' Compensation Court. The attorney subsequently secured additional workers' compensation benefits for accrued and accruing TTD at a higher weekly rate than previously paid.

¶ 5 Following rehabilitation, Plaintiff returned to work on September 29, 2003. Shortly after reporting to work, Plaintiff was called to the office and told "they didn't need me [any] more," and "we just don't have [any]thing for you," although "there was never [any talk] of anything like firing me or laying me off" previously. And, Plaintiff denied that he was ever offered work in any other department upon his release from treatment in September. Plaintiff opined that, because he neither perceived nor suffered any adverse consequences of his first absence upon his return to work in March 2006, Defendant must have terminated his employment because he had retained counsel and pursued additional workers' compensation benefits during his second absence.

¶ 6 However, Plaintiff admitted that, upon notifying Defendant's warehouse manager of his injury, the manager recommended that he promptly obtain medical attention, and that Defendant filed its Form 2, Employer's First Notice of Injury, in the Workers' Compensation Court shortly after his injury to commence payment of workers' compensation benefits to him. Plaintiff also admitted that, to his knowledge, Defendant had never threatened or fired an employee because of an on-the-job injury, or pursuit of workers' compensation benefits, or for hiring an attorney to pursue such a claim.

¶ 7 The Defendant's warehouse manager testified that it was necessary to obtain a replacement to perform Plaintiff's job during his injury-related absence, and that, when Plaintiff returned to work in September, there were no openings in the department where Plaintiff had previously worked. The warehouse manager further alleged that he offered Plaintiff work in another department, which Plaintiff refused.

¶ 8 But, the warehouse manager also testified that he thought Plaintiff had abandoned his employment when he left in March. And, the warehouse manager further attributed Plaintiff's termination to the loss of one major client and a decline in business, requiring a general reduction in the warehouse workforce, although he admitted the loss of the major client did not directly impact the department where Plaintiff had worked.

¶ 9 Upon presentation of Plaintiff's case in chief, Defendant interposed a demurrer to the evidence and motion for directed verdict. Upon consideration of the parties' trial briefs and arguments, the trial court granted judgment for Defendant, holding:

The Court finds that the Plaintiff failed to present sufficient evidence to raise a legal inference that retaliation was involved in the discharge.... The Court finds that the timing of the termination does not raise an inference that the termination was significantly motivated by the Plaintiff's filing of a Worker's Compensation Claim or by his hiring of an attorney. The uncontroverted testimony from the Plaintiff was that no one threatened his job for filing a Worker's Compensation Claim or for hiring an attorney. The Plaintiff testified that no one at Hodges, to his knowledge, has ever been fired or threatened for filing a Worker's Compensation Claim or hiring an attorney in order to assist with a Worker's Compensation Claim. The Plaintiff has presented no evidence of any pattern of the Defendant ever firing any employee for filing a Worker's Compensation Claim within the last ten (10) years. The Plaintiff has presented no evidence that any supervisor at Hodges criticized the Plaintiff for seeking Worker's Compensation benefits or for hiring an attorney to assist him with his claim.

The Court notes that [Defendant] did not fight the Worker's Compensation Claim when it was initially filed and assisted [Plaintiff] in getting treatment and gave [Plaintiff] his old job back when he returned to work in March.

Based on these reasons, the Court finds that the Plaintiff has failed to establish his *prima facie* case and that the *Motion for a Directed Verdict* should be and hereby is granted. Judgment should be and hereby is entered in favor of the Defendant, Port

City Properties, Inc., d/b/a Hodges Warehouse.

(Emphasis original.)

### Standard of Review

 ¶ 10 The same legal standard governs a ruling on a demurrer to the evidence, motion for directed verdict and motion for summary judgment. *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 6, 948 P.2d 298, 301–302; *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* 1985 OK 66, ¶ 44, 713 P.2d 572, 586.[1] A demurrer to the evidence, motion for directed verdict or motion for summary judgment should not be granted unless there is an entire absence of proof on a material issue, and all should be denied "when there are questions of material fact or reasonable persons could differ as to the choice of inferences to be drawn from the facts in evidence." *Harder,* 1997 OK 137, ¶ 6, 948 P.2d at 301–302; *Middlebrook,* 1985 OK 66, ¶ 44, 713 P.2d at 586. To determine whether the evidence is sufficient to withstand a demurrer to the evidence, motion for directed verdict, or motion for summary judgment, the trial court must consider the evidence in the light most favorable to the plaintiff, and "[o]nly if all the inferences to be drawn from the evidence are in favor of the moving party will a [demurrer,] directed verdict [or summary judgment] withstand appellate scrutiny." *Harder,* 1997 OK 137, ¶ 6, 948 P.2d at 301–302.

### Retaliatory Discharge

 ¶ 11 "No person, firm, partnership, corporation, or other entity may discharge . . . any employee because the employee has in good faith: [f]iled a [workers' compensation] claim; [r]etained a lawyer for representation regarding a claim; [i]nstituted or caused to be instituted any proceeding under the provisions of this title; [or][t]estified or is about to testify in any proceeding under the provisions of" the Oklahoma Workers' Compensation Act. 85 O.S. 5(A). In order to establish a *prima facie* case for retaliatory discharge under § 5, "[t]he discharged em-

ployee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment." *Buckner v. General Motors Corp.,* 1988 OK 73, ¶ 9, 760 P.2d 803, 806. (Emphasis original.) "The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee." *Buckner,* 1988 OK 73, ¶ 11, 760 P.2d at 807.

 ¶ 12 The plaintiff's "evidence must have sufficient probative value to constitute the basis for a legal inference rather than mere speculation." *Mantha v. Liquid Carbonic Industries, Inc.,* 1992 OK CIV APP 28, ¶ 7, 839 P.2d 200, 203; *Gussa v. J. Morris and Associates, Inc.,* 2000 OK CIV APP 50, ¶ 2, 12 P.3d 473, 474; *Wallace v. Haliburton Co.,* 1993 OK 24, ¶ 11, 850 P.2d 1056, 1059; *Thompson v. Medley Material Handling, Inc.,* 1987 OK 2, ¶ 8, 732 P.2d 461, 463. "Because employers seldom admit to any wrongdoing, the link between the employee's filing of a workers' compensation claim and his subsequent termination m[ay] . . . be shown by circumstantial evidence." *Mantha,* 1992 OK CIV APP 28, ¶ 7, 839 P.2d at 203; *Thompson,* 1987 OK 2, ¶ 8, 732 P.2d at 463.

 ¶ 13 The timing of the discharge *may* constitute evidence of retaliatory motive, but it is not outcome determinative. *Gussa,* 2000 OK CIV APP 50, ¶ 2, 12 P.3d at 474; *Wallace,* 1993 OK 24, ¶ 6, 850 P.2d at 1059; *Thompson,* 1987 OK 2, ¶ 10, 732 P.2d at 463. The employer's response to its employees' contemplated or actual commencement of workers' compensation proceedings may also constitute evidence of retaliatory motive. *See, Wallace,* 1993 OK 24, ¶¶ 12–16,

---

1. "[A]ppellants contend that their demurrer to the evidence should have been sustained. Upon review of that contention it is incumbent upon this court to examine the evidence in the light most favorable to the plaintiff and if there is any competent evidence or reasonable inference from the evidence tending to establish a cause of action, the demurrer is correctly overruled."

850 P.2d at 1059–60.[2] *See also, Rogers v. Welltech, Inc.*, 1991 OK CIV APP 21, ¶¶ 5–7, 813 P.2d 534, 536; *Elzey v. Forrest*, 1987 OK 58, ¶ 12, 739 P.2d 999, 1003.

¶ 14 If the plaintiff demonstrates a prima facie case, "the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason for the discharge." *Buckner*, 1988 OK 73, ¶ 9, 760 P.2d at 806. "The employer's burden is a burden of production of relevant and credible evidence, not a burden of persuasion[,][and][i]t is sufficient if the employer's evidence raises a genuine issue of fact concerning whether it retaliatorily discharged the employee." *Buckner*, 1988 OK 73, ¶ 10, 760 P.2d at 807. "[T]he worker [is then afforded] a full and fair opportunity to demonstrate that the reason offered by the employer for terminating the employee was not the true reason for the employment decision but was, rather, a pretext." *Id.*

¶ 15 Where plaintiff makes a prima facie showing of retaliatory discharge, and plaintiff's evidence is controverted by the defendant/employer, "it [is] for the jury to decide what weight the evidence would be afforded." *Wilson v. Hess–Sweitzer & Brant, Inc.*, 1993 OK 156, ¶ 18, 864 P.2d 1279, 1284; *Wallace*, 1993 OK 24, ¶ 16, 850 P.2d at 1060. Ultimately, where reasonable people could differ on the questions of the employer's retaliatory motive or pretextual explanation, a demurrer to the evidence or motion for directed verdict should be denied, and the questions submitted to the jury for resolution. *Wallace*, 1993 OK 24, ¶ 16, 850 P.2d at 1060; *Rogers*, 1991 OK CIV APP 21, ¶ 7, 813 P.2d at 536.

¶ 16 Did Plaintiff present probative evidence, which, when viewed in the light most favorable to him, establish such a legal inference of retaliatory motive? We think so. The evidence and testimony showed that Plaintiff neither discerned nor experienced any adverse consequences of his first injury-related absence when he returned to work in March, but that, after he hired an attorney and pursued an adjustment to his weekly TTD benefit during his second injury-related absence, Defendant terminated his employment. The evidence and testimony also showed that Defendant offered differing reasons for Plaintiff's termination, variously ascribed to the needs of the Plaintiff's department, a decline in business, Plaintiff's abandonment of the employment, and/or Plaintiff's refusal of employment in a different department.

¶ 17 On this evidence, we believe reasonable people might conclude that Defendant terminated Plaintiff only out of business necessity. However, we believe reasonable people might also conclude that Defendant terminated Plaintiff because he retained an attorney to pursue additional TTD benefits, and that Defendant's professed reasons for terminating Plaintiff were pretextual.

¶ 18 Under these circumstances, because reasonable people could differ as to the choice of inferences to be drawn from the facts in evidence, we hold the trial court should not have granted Defendant's demurrer to the evidence/motion for directed verdict. The order of the trial court granting Defendant's demurrer to the evidence/motion

---

**2.** Where, "[p]rior to his injury, [plaintiff] had been rated competent or commendable in most areas of his work and had recently received a raise and a promotion[,][t]here was no evidence that Wallace could not perform his job upon returning to work[,][t]here was evidence that employees were encouraged to file work related injuries under [defendant's] self-health insurance rather, than under workers' compensation[,][an] ... employee from another plant testified that his supervisor got mad when he said he was going to file a workers' compensation claim, [t]here was testimony from [plaintiff] and another ... employee who said they worried about being discharged if they filed a claim for work- ers' compensation[,][e]vidence was offered that other employees less qualified than Wallace but who had not filed compensation claims were not let go[,][and][e]vidence of a pattern of terminating employees who filed workers' compensation claims was offered," held, "a jury could have concluded with reasonable probability that Wallace's filing a claim was a significant factor in Halliburton's decision to choose him as one of the four employees to be laid off," "it was for the jury to decide what weight the evidence would be afforded," "[t]he trial court did not error in overruling Halliburton's motions for directed verdict and new trial."

for directed verdict is REVERSED, and the cause REMANDED for further proceedings.

ADAMS, J., and MITCHELL, V.C.J., concur.