OSCN Found Document:BROWN v. MULDROW PUBLIC SCHOOLS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 BROWN v. MULDROW PUBLIC SCHOOLS
2024 OK CIV APP 20
Case Number: 120934
Decided: 07/17/2024
Mandate Issued: 08/09/2024
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I

Cite as: 2024 OK CIV APP 20, __ P.3d __

 

GEORGE CHRISTOPHER BROWN, Plaintiff/Appellee,
v.
MULDROW PUBLIC SCHOOLS, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
SEQUOYAH COUNTY, OKLAHOMA

HONORABLE JEFFREY J. PAYTON, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART

Jeffrey L. Edwards, FLYNN, EDWARDS & O'NEAL, PLLC, Roland, Oklahoma, and
Michael M. Blue, BLUE LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellee,

Frederick J. Hegenbart, Adam S. Breiphol, ROSENSTEIN, FIST & RINGOLD, Tulsa, Oklahoma, for Defendant/Appellant.

THOMAS E. PRINCE, JUDGE:

¶1 Defendant/Appellant, Muldrow Public Schools ("the School District") has appealed the Journal Entry of Judgment which followed a jury's verdict and resulted in an award to Plaintiff/Appellee, George Christopher Brown of $125,000.00 in damages and an additional $16,061.74 in costs. The School District alleged error concerning the trial court's (1) denial of its Motion for a Directed Verdict; (2) denial of three requested jury instructions; and (3) computation and award of damages, fees, and costs. We find the trial court properly denied both the School District's Directed Verdict and requested jury instructions at issue. We also find that, while the trial court award of damages in the amount of $125,000.00 was correct, the trial court erred in its award of expert costs to Brown in excess of the $125,000.00 damages. We, thus, affirm the trial court's judgment in part and vacate in part.

BACKGROUND

¶2 George Brown commenced this action following an assault while a student at Muldrow High School on September 29, 2016. Prior to the assault, Brown was the subject of repeated bullying and verbal harassment by another student, B.B. Brown alleged he had reported the incidents on multiple occasions, both to his teacher, Leona Gann, and the Principal of Muldrow High School, Steven Page. Brown alleged that, despite both his and his parents' efforts to seek help from Principal Page to put an end to the bullying, no action was taken to stop B.B.'s recurring behavior. The School District maintained, however, that Principal Page met with B.B. on one occasion to discuss the reported bullying before the September 29th altercation between the two students and that Principal Page specifically directed B.B. to stop contact with Brown. The School District further contended that Principal Page did not consider any prior incidents between Brown and B.B. to amount to "bullying," but Brown, his parents, and Mrs. Gann all testified to the obvious emotional toll the repeated harassment had taken on Brown.

¶3 In the week leading up to the September 29, 2016 altercation, Brown and B.B. had several verbal altercations between one another and their respective groups of friends. One of the verbal altercations occurred on or about September 22, 2016, in a common area outside the high school building, during which Muldrow High School Teacher, Julie Boshers, verbally de-escalated the situation. Of note, Julie Boshers was not only a teacher at the high school, but was also B.B.'s mother. Boshers proceeded to take both students to Principal Page's office, where both students received disciplinary action, were instructed to leave each other alone, and told to inform Principal Page of any further incidents. Following the September 22nd verbal altercation, but prior to the September 29th physical altercation, Brown was told by other students that B.B. was telling others he was going to beat up Brown, so Brown, again, reported the specific threat to Principal Page. Another teacher, Lori Likens, testified after-the-fact that a "conflict between [B.B.] and Brown had been brewing for weeks." On the morning of the September 29th physical altercation, Principal Page spoke with Boshers to determine whether issues had persisted between Brown and B.B., which Boshers confirmed remained ongoing.

¶4 According to Brown's Petition, on September 29, 2016, during the students' lunch period, B.B. challenged Brown to a fight on the Muldrow High School grounds, but Brown later described in his deposition that he approached B.B. and told him to "meet [Brown] at the park so [they] can finally make everything stop." Boshers was on "relief duty" during the lunch period with another teacher where the two were responsible for monitoring the students outside the school gymnasium. After allegedly leaving his belongings with Boshers, B.B. proceeded to walk up to Brown and immediately punched Brown in the chin. In both his deposition and trial testimony, Brown recounted blacking out and waking up to find B.B. holding him in a headlock punching him in the forehead, after which B.B. flipped Brown upside-down, tossed him headfirst onto the concrete and threw one final punch into the back of Brown's head.

¶5 Brown's description of the events were further corroborated by video footage taken by a bystander which was included in the record. The physical altercation concluded when another minor student, E.R., separated Brown and B.B. Notably, the video footage also appears to depict Boshers standing stationary in the background through the majority of B.B.'s physical assault upon Brown, making no efforts to intervene until, as she claimed, she directed E.R. "to break it up." B.B. and Brown were subsequently brought to Principal Page's office, where B.B. received a citation for instigating the physical altercation and was suspended. Brown also testified to the fact he received no medical attention following the physical altercation, despite suffering trauma to his head, neck, and spine during the course of the assault.

¶6 Several months after the physical altercation, Brown began treatment for both the physical and mental aftermath of the altercation, including medical treatment for broad based disc bulges and trauma to his neck, back, and shoulders, in addition to psychological treatment for depression, severe anxiety, and stress. After filing the requisite Notice of Tort Claim to the Muldrow Board of Education on September 19, 2017, Brown filed suit against the School District and teacher, Julie Boshers, in her individual capacity on June 19, 2018. Brown asserted three negligence-based causes of action against the School District and Boshers, which included claims for negligence, negligent supervision and training (against the School District only), and negligence per se, in addition to a claim for intentional infliction of emotional distress. Brown filed an Amended Petition on July 2, 2018.

¶7 On May 28, 2021, the School District filed a Motion for Summary Judgment. The School District claimed it was entitled to summary judgment on all three negligence claims because they were based on attempts to hold the School District liable for (1) conduct by Boshers which was outside the scope of employment; (2) conduct by other School District employees which was not the proximate cause of Plaintiff's injury; and (3) an injury which was caused by the supervening act of a third party. The School District further argued that the GTCA barred Brown's claims for intentional infliction of emotional distress, negligent supervision, and punitive damages, in addition to arguing that Brown's negligence per se claim failed to state a claim upon which relief could be granted. On August 27, 2021, following a hearing, the trial court granted the School District's Motion (in part) as to Brown's claims for negligence per se, intentional infliction of emotional distress, and punitive damages. The trial court denied the School District's Motion as to Brown's claims for negligence and negligent supervision.

¶8 Brown's remaining claims against both the School District and Boshers for negligence and negligent supervision were scheduled for a jury trial on April 26, 2022. Prior to the trial, Brown reached a $45,000 settlement agreement with Boshers which was formally memorialized on April 4, 2022. In the School District's Trial Brief and Motion for Entry of Judgment and/or Dismiss, the School District alleged the language of the settlement agreement not only released Boshers from tort liability, but also released the School District from liability arising out of Boshers' conduct while in the scope of her employment with the School District.

¶9 On April 25, 2022, the trial court held a hearing on the School District's Motion for Entry of Judgment and/or Dismiss, where the trial court ruled that all claims against the School District based on vicarious liability for Boshers' conduct had been settled and, thereby, released. The trial court additionally found, however, that Brown's remaining causes of action against the School District which involved the actions of other School District employees had not been released through the settlement agreement and should proceed to trial.

¶10 The jury trial commenced the following day (on April 26, 2022) and went on until April 29, 2022. The School District's primary argument at trial concerned the causation of Brown's injuries, largely focused on the fact that the School District could not be held liable for B.B.'s allegedly "unforeseeable" assault of Brown, nor could it be held liable for Boshers' negligent conduct which fell outside the scope of her employment with the School District. The School District maintained that, beyond Boshers, all other School District employees operated in accordance with the School District's policies and training about bullying and harassment. Brown contended, however, that the negligence of School District employees other than Boshers contributed to Brown's resulting injuries, citing to the numerous failures by School District employees to take adequate action to investigate and quell the persistent bullying and harassment. Brown contended he had met with Principal Page on at least three occasions to report the bullying and harassment, including informing Principal Page that B.B. had specifically threatened to beat up Brown in the days leading up to the September 29th physical assault. Brown's contention was supported by testimony of both his teacher, Mrs. Gann, and his parents, all of whom testified to their many attempts to contact Principal Page and Superintendent Flanagan so to bring an end to the bullying. Trial testimony revealed that, despite B.B. having had a history of bullying offenses documented in his disciplinary record, Principal Page took few, if any, remedial measures to address Brown's reports of B.B.'s bullying and harassment. Brown also testified to the aftermath of the physical assault, citing to the chronic neck and back pain that he continued to suffer from through the years following the assault, which have impeded his ability to maintain consistent employment. Brown also attested to the psychological toll the assault had taken on him, noting the severe PTSD and anxiety he has endured for years.

¶11 After Brown rested his case, the School District moved for a directed verdict where it re-urged all the arguments raised in its MSJ, which was denied. The School District renewed its motion after resting its own case, re-urging the same arguments, which the trial court, once again, denied. When discussing both parties' proposed jury instructions on the final day of trial, School District requested jury instructions on the issues of intervening cause and several affirmative defenses under the GTCA, which were denied. The jury deliberated and, ultimately, returned with a verdict of $312,600.00 against the School District, which was reduced to $177,119.16 (56.66%) based on the comparative negligence of Boshers (30.00%), B.B. (7.50%), and Brown (5.84%).

¶12 The School District and Brown disagreed on several issues with regard to the calculation of damages, as well as the trial court's award of attorney's fees and expert costs, so the trial court conducted a hearing on post-trial motions on September 12, 2022. First, the parties disagreed as to the order in which the remittitur to the $125,000.00 liability limit provided under the GTCA and the offset under Uniform Contribution Among Tortfeasors Act (UCATA) should be applied. The School District maintained that the trial court should have first applied the GTCA remittitur to reduce the jury's award of damages from $312,600.00 to the $125,000.00 GTCA cap provided in 51 O.S. § 154(A)(2), followed second by the reduction from $125,000.00 to $80,000 based upon Boshers' share of liability which was settled prior to trial. Brown argued for the opposite order, maintaining that the UCATA offset should be applied first to the total award of $312,600.00 (of which the School District would bear 56.66%, totaling $177,119.16) followed second by a remittitur of the damages to the GTCA § 154(A)(2) cap of $125,000.00. The trial court opted for Brown's calculation of damages and applied the UCATA offset before the GTCA remittitur, ultimately awarding Brown $125,000.00. Brown also requested attorney's fees and costs through the School Protection Act, 70 O.S. § 6-149.9. The School District argued the SPA was not applicable to the instant case, maintaining it was intended only to relate to claims by students against school district employees. The trial court ultimately denied Brown's request for attorney fees but granted Brown's motion for an award of costs worth $16,061.74, resulting in a total judgment in the amount of $141,061.74.

¶13 The School District has timely appealed the Journal Entry of Judgment, asserting error with regard to the trial court's (1) denial of the School District's Motion for a Directed Verdict; (2) denial of three requested jury instructions; and (3) award of damages and costs. Brown also filed a timely counter appeal, alleging error on the single issue of the trial court's denial of Brown's request for attorney's fees.

STANDARD OF REVIEW

¶14 Appellate courts accord great weight to jury verdicts, and we will not set aside a jury verdict unless it is "beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." Death of Lofton v. Green, 1995 OK 109, ¶ 10, 905 P.2d 790, 792 (citing Park v. Security Bank & Trust, 1973 OK 72, ¶ 9, 512 P.2d 113, 116). Under this standard, a jury's verdict is conclusive as to all disputed facts and conflicting statements. Stroud v. Arthur Andersen & Co., 2001 OK 76, ¶ 9, 37 P.3d 783, 787

¶15 The School District has alleged error first with regard to the trial court's denial of its Motion for a Directed Verdict, which we review de novo. Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50, ¶ 24, 510 P.3d 845, 853. In exercising de novo review, "this Court possesses plenary, independent, and non-deferential authority to examine the issues presented." Benedetti v. Cimarex Energy Co., 2018 OK 21, ¶ 5, 415 P.3d 43, 45. A motion for directed verdict raises the question of whether there is any evidence to support a judgment for the party against whom the motion is made, and we, like the trial court, must consider as true all the evidence and inferences reasonably drawn therefrom favorable to the non-movant, and disregard any evidence which favors the movant. Gillham v. Lake Country Raceway, 2001 OK 41, ¶ 7, 24 P.3d 858, 860 (citations omitted). A motion for a directed verdict should be granted only if the party opposing the motion has failed to demonstrate a prima facie case for recovery. Id.

¶16 The School District has also alleged error regarding the trial courts denial of three requested jury instructions. When reviewing contested jury instructions, we consider "the accuracy of the statement of law, the applicability of the instructions to the issues when the instructions are considered as a whole, and above all, whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction." Cimarron Feeders, Inc., v. Tri-County Elec. Coop., Inc., 1991 OK 104, ¶ 6, 818 P.2d 901. When the trial court submits a case to the jury under proper instructions on its fundamental issues and a judgment within the issues and supported by competent evidence is rendered in accord with the verdict, the judgment will not be reversed on appeal unless: (1) it appears reasonably evident that the jury was misled by the allegedly erroneous instruction; (2) that misdirection of the jury resulted in a miscarriage of justice or substantial violation of the complaining party's constitutional statutory rights; and/or (3) but for the error the jury would in all probability have reached a different result. Myers v. Missouri Pacific R. Co., 2002 OK 60, ¶ 29, 52 P.3d 1014, 1029; see also 12 O.S. 2011 § 3001.1

¶17 Finally, both the School District and Brown alleged error concerning the trial court's calculation of damages and award of costs and fees. While each allegation of error concerning the award of costs and damages deal with different components of Brown's ultimate award of damages, all three sub-issues deal with statutory interpretation. Our review of legal questions involving statutory interpretation are also subject to de novo appellate review. Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654 (citing Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5); Wylie v. Chesser, 2007 OK 81, ¶ 4, 173 P.3d 64, 66.

ANALYSIS

¶18 The School District, as the initial appealing party, asserted fifteen issues[1] in its Petition in Error. Upon our review of the record and the School District's Br.-in-Chief, we gleaned nine actionable allegations of error which fall into three, overarching categories. First, the School District alleged error with regard to the trial court's denial of the School District's Motion for a Directed Verdict on three, individual issues related to causation: (1) that the physical altercation between Brown and B.B. was unforeseeable as a matter of law; (2) that B.B.'s conduct was an intervening/supervening cause of the Brown's injury; and (3) that the proximate cause of Brown's injury was Boshers' conduct which fell outside the scope of her employment. Second, the School District claimed the trial court committed reversible error by denying the School District's request for jury instructions on three sub-issues: (1) an instruction on intervening cause; (2) instructions on relevant exemptions from liability provided under Section 155 of the Oklahoma Government Tort Claims Act, specifically the exemptions provided under 51 O.S. § 155(4), (5), and (29); and (3) an instruction that punitive damages cannot be awarded against the School District pursuant to the GTCA. Third, the School District alleged error in the trial court's award of damages, including: (1) the trial court's application of the offset based on the Brown's settlement with Boshers under 12 O.S. § 832(H) prior to the remittitur to the limits on liability provided under the GTCA; (2) the trial court's award of costs to the Plaintiff under the School Protection Act, 70 O.S. § 6-149.5; and (3) the trial court's award of attorney's fees and costs which exceed the $125,000.00 limit on liability imposed by the GTCA. In addition to the School District's nine issues, Brown filed a counter appeal asserting one additional issue, alleging the trial court erred determining that attorney's fees were not awardable under the School Protection Act, 70 O.S. § 6-149.5.

¶19 Based on our comprehensive review of the record and relevant law, we find no error in the trial court's denial of the School District's Motion for a Directed Verdict, as the trial court properly determined issues of fact remained in dispute necessitating jury consideration. We further find no error in the trial court's denial of the three requested jury instructions at issue. Finally, we find that, while the trial court's award of damages in the amount of $125,000.00 was proper, the trial court erred by awarding Brown the additional $16,061.74 in costs, as the School District's tort liability cannot exceed the GTCA cap. Accordingly, the underlying judgment awarding Brown $125,000.00 in damages for the School District's negligence is affirmed, but the trial court's additional award of costs in the amount of $16,061.74 is vacated.

A. Whether the trial court erred in denying School District's Motion for Directed Verdict.

¶20 The School District moved for a Directed Verdict after Brown rested, and later renewed its Motion upon resting its own case, both of which the trial court denied. The School District contended it was entitled to a Directed Verdict based upon the purported lack of evidence of the School District's negligence and Brown's settlement of his claim against Boshers prior to the trial. More specifically, the School District sought a Directed Verdict on three issues (which were also raised in the School District's Motion for Summary Judgment), including: (1) that the physical altercation and Brown's resulting injuries were unforeseeable to the school district; (2) that B.B.'s conduct was an intervening/supervening cause of Brown's injury; and (3) that Boshers' actions, which the School District alleged did not fall within the scope of her employment, were the proximate cause of Brown's injuries. As a preliminary matter, we note that all three of the preceding issues relate to causation. It is well established that issues of causation usually present a question of fact necessitating jury resolution, lending credence to the trial court's denial of the School District's Motion for a Directed Verdict. Jackson v. Jones, 1995 OK 131, ¶¶ 8-11, 907 P.2d 1067, 1073-74 (determination of proximate cause, intervening cause, and foreseeability are all generally questions of fact for the jury).

¶21 A directed verdict "is a mechanism by which the judge controls the jury by taking the case out of the jurors' hands, and acts somewhat like a delayed summary judgment motion in that it determines that there are no genuine issues of fact that need to be sent to the jury." Cook v. Bishop, 1988 OK 120, ¶ 9, 764 P.2d 189, 191. A directed verdict should only be granted where there is "an entire absence of proof on a material issue," and must be denied "when there are questions of material fact or reasonable persons could differ as to the choice of inferences to be drawn from the facts in evidence." Estrada v. Port City Properties, Inc., 2007 OK CIV APP 23, ¶ 10, 158 P.3d 495, 499 (citing Harder v. F.C. Clinton, Inc., 1997 OK 137, ¶ 6, 948 P.2d 298, 301--302). Accordingly, the trial court's denial of the School District's Motion for a Directed Verdict on all three issues is affirmed.

1. Foreseeability of the Physical Altercation & Brown's Resulting Injuries

¶22 As stated above, a directed verdict is only proper where the party opposing the motion failed to demonstrate a prima facie case for recovery. Gillham v. Lake Country Raceway, 2001 OK 41, 24 P.3d 858. At trial, Brown maintained two causes of action against the School District: negligence and negligent supervision and training. To make a prima facie showing of negligence, a party must demonstrate: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to properly exercise or perform that duty; and (3) plaintiff's injuries proximately caused by the defendant's failure to exercise the duty of care. Franklin v. Toal, 2000 OK 79, ¶ 14, 19 P.3d 834, 837, as corrected (Feb. 26, 2001). In defining the scope of a defendant's duty, foreseeability is the most important consideration, as "[f]oreseeability establishes a 'zone of risk,'" which "forms a basis for assessing whether the conduct 'creates a generalized and foreseeable risk of harming others.'" Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 2002 OK 76, ¶ 10, 60 P.3d 497, 502. Depending on the scope of a defendant's duty, this "zone of risk" can extend to the actions of third parties, as an "act or omission by a defendant may be considered negligent if it involves an unreasonable risk of harm to another through the foreseeable act of a third person." Brewer v. Murray, 2012 OK CIV APP 109, ¶ 13, 292 P.3d 41, 47, as corrected (May 30, 2013)

¶23 In a similar vein, a claim for negligent supervision and training requires a showing that an employer met the three, preceding elements of negligence during the "hiring, supervising, or retaining" of an employee. Le v. Total Quality Logistics, LLC, 2018 OK CIV APP 71, ¶ 26, 431 P.3d 366, 375. In a negligent supervision claim, an employer will be found liable if, "at the critical time of the tortious incident," the employer "had reason to believe that the [employee] would create an undue risk of harm to others" based upon the employer's "prior knowledge of the [employee's] propensity to commit the very harm for which damages are sought." N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶ 20, 998 P.2d 592, 600. In essence, an employer may bear liability of an employee's unreasonable or injurious conduct upon a third party if said conduct was reasonably foreseeable. Schovanec v. Archdiocese of Oklahoma City, 2008 OK 70, ¶ 40, 188 P.3d 158, 172, as corrected (July 2, 2008)

¶24 The School District argued both at the trial level and on appeal that Brown failed to demonstrate that B.B.'s assault upon Brown was foreseeable to the school administration, maintaining that "[a]t no point during these proceedings was there any evidence that any employee of the School District other than Boshers, who was acting in bad faith and outside the scope of employment, knew or had reason to know of a threat to the safety of Brown before the altercation with B.B." We disagree with the School District's portrayal of the evidence, as the record supports Brown's contention that multiple employees of the School District beyond Boshers were aware of B.B.'s persistent bullying of Brown. This evidence includes the repeated attempts by Brown, his parents, and his teacher, Mrs. Gann, to report B.B.'s persistent bullying of Brown and B.B.'s clear threats of violence to both Principal Page and Superintendent Flanagan. In addition, according to Principal Page's deposition, B.B.'s disciplinary record noted multiple incidents of harassment and bullying which were formally documented by school administration prior to B.B.'s September 29th physical assault of Brown, further contributing to the foreseeability of B.B.'s conduct.

¶25 We find that Brown provided sufficient evidence to preclude the School District's Motion for a Directed Verdict on the issue of foreseeability. Whether a negligent event's injurious consequences could have been reasonably foreseen presented a jury question, and the trial court appropriately left this issue to be decided by the jury. Lockhart v. Loosen, 1997 OK 103, ¶ 11, 943 P.2d 1074, 1079, as corrected (Aug. 21, 1997). Accordingly, we find no error in the trial court's denial of the School District's Motion for a Directed Verdict on the issue of foreseeability.

2. B.B.'s Conduct as an Intervening/Supervening Cause of Brown's Injury

¶26 In moving for a Directed Verdict, the School District specifically argued it could not be held liable for Brown's injuries because B.B.'s "sudden and unprovoked intentional act" constitutes a supervening cause which broke the causal chain between any alleged negligence by the School District and Brown's resulting injuries. For an intervenor's act to become a "supervening cause" which interrupts the causal chain and cuts off possible liability for the original negligence, the act must: (1) be independent of the primary negligence; (2) be adequate of itself to bring about the injury complained of; and (3) not be a reasonably foreseeable event. Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997). Notably, if a supervening cause was reasonably foreseeable or should have otherwise been anticipated, then the original, negligent act remains the proximate cause of the injury. Worsham v. Nix, 2004 OK CIV APP 2, ¶ 13, 83 P.3d 879, 884 (citing Runyon v. Reid, 1973 OK 25, ¶ 35, 510 P.2d 943, 948). In addition, "where the primary act of negligence is not superseded by a second cause--i.e., continues to operate concurrently, so that damage is the result of both causes acting in concert--each act may be regarded as the proximate cause and the wrongdoers will be jointly and severally liable for the plaintiff's compensable harm." Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997).

¶27 Because the foreseeability of an intervening force is dispositive in determining whether the intervenor's act became the "supervening cause" in a negligence action, resolution of this factual dispute necessitated evaluation by the jury. Accordingly, we find no error in the trial court's denial of the School District's Motion for a Directed Verdict with regard to B.B.'s conduct serving as a supervening cause, as the foreseeability of B.B.'s conduct remained in controversy.

3. Proximate Cause of Brown's Injury

¶28 In a GTCA action, a government entity can only be held liable for an employee's tortious conduct when the employee was acting within the scope of his or her employment. 52 O.S. 153(A). An employee's "scope of employment" is defined as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority." Speight v. Presley, 2008 OK 99, ¶ 12, 203 P.3d 173, 176 (citing 51 O.S. § 152(12)).

The School District argued that Boshers' actions -- both leading up to and during the physical altercation between B.B. and Brown -- were not consistent with the "good faith performance of her duties as a teacher," which placed her conduct outside the scope of her employment and, therefore, exempted the School District from liability resulting from Boshers' negligent conduct. This argument, however, overlooked Brown's claims of negligent conduct of other School District employees and administrators who Brown alleged failed to take adequate action to investigate and respond to Brown's reports of B.B.'s persistent bullying and harassment. Specifically, Brown attested to informing his teacher, Mrs. Gann, of B.B.'s bullying, in addition to reporting B.B.'s conduct directly to Principal Page on multiple occasions. Brown's parents also testified to their repeated attempts to contact both Principal Page and Superintendent Flanagan, after which Brown's parents attested to feeling like both Principal Page and Superintendent Flanagan "just didn't care" about the bullying Brown was suffering.

¶29 Although the School District insisted Boshers' negligent conduct was the sole, proximate cause of Brown's resulting injuries, we find that facts relating to causation remained in controversy which warranted jury consideration. A tortious event's proximate cause is what sets in motion the chain of circumstances leading to the injury, but an event's proximate cause is not limited to a singular, causal entity. Thur v. Dunkley, 1970 OK 157, 474 P.2d 403, 405. "Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes." Green v. Sellers, 1966 OK 65, ¶ 24, 413 P.2d 522, 528. Put simply, separate negligent acts of two or more people which combine to produce a single injury can serve as the proximate cause in a negligence action, so long as the injury would not have resulted in the absence of one of the concurrent causes. City of Okmulgee v. Hemphill, 1938 OK 474, ¶ 8, 183 Okla. 450, 83 P.2d 189, 191.

¶30 When the School District moved for a directed verdict, questions of fact remained disputed concerning the causal role of Principal Page and Superintendent Flanagan's alleged negligence, both with regard to their alleged lack of proactive steps once on notice of B.B.'s bullying of Brown, in addition to the School District's negligent enforcement of its anti-bullying policy. Whether two causes are concurrent or whether one cause merely creates a condition for the second cause presents a question of fact and, "[u]nless the facts are undisputed and point inexorably to one conclusion, that determination is not properly made by the trial court on a demurrer to the evidence." Robinson v. Oklahoma Nephrology Associates, Inc., 2007 OK 2, ¶ 16, 154 P.3d 1250, 1256. Accordingly, the question as to whether Boshers' negligent conduct was the sole, proximate cause of Brown's injuries or whether the actions (or lack thereof) of other School District employees served as concurrent causes in Brown's resulting injuries remained in dispute. Oklahoma case law is clear that where facts relevant to questions of primary negligence are in dispute, the issue must be presented to the jury. Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 18, 352 P.3d 1223, 1228. We find the trial court appropriately denied of the School District's Motion for a Directed Verdict on the issue of proximate cause, thereby allowing the jury to consider the factual dispute and come to its own conclusion regarding the comparative fault of each tortfeasor.

B. Whether the trial committed reversible error by denying the School District's requested jury instructions.

¶31 The School District has further argued on appeal that the trial court committed reversible error by denying the School District's request for jury instructions on three, individual issues: (1) intervening cause; (2) exemptions from liability pursuant to 51 O.S. § 155; and (3) the unavailability of punitive damages in a GTCA claim. In reviewing a judgment following a jury trial, we will not disturb the judgment because of allegedly erroneous instructions unless it clearly appears that the instruction caused a miscarriage of justice or led to a different verdict than would have been rendered but for the alleged error. Nail By and Through Nail v. Okla. Children's Mem'l Hosp., 1985 OK 101, ¶ 11, 710 P.2d 755, 759. Even where a party submits instructions to the trial court which are sufficient to properly state the issues and the applicable law to the jury, "it is not error to refuse to submit to the jury requested instructions covering the entire case or any particular issue involved although the requested instructions state the law correctly." ABC Coating Co., Inc. v. J. Harris & Sons Ltd., 1986 OK 28, ¶ 24, 747 P.2d 266, 271 (citing City of Holdenville v. Griggs, 1966 OK 34, ¶ 22, 411 P.2d 521, 526).

¶32 Brown has summarily argued the School District waived appellate review of all three of the jury instructions at issue by failing to make a formal objection as required by a strict reading of 12 O.S. § 578,[2] but our review of the trial transcript and applicable procedural authority reveals the School District has properly preserved appellate review of the trial court's denial of the School District's requested jury instructions. The purpose of the § 578 requirement of a documented "objection" is merely intended to "inform the court of any defect or irregularity in order that the court may be informed and correct any error." Cantrell v. Henthorn, 1981 OK 15, ¶ 4, 624 P.2d 1056, 1057. Accordingly, Oklahoma courts have found that, so long as the objecting party took "adequate steps to appraise the court of his objections" and gave the court "ample opportunity to correct any mistakes," the objecting party has complied with the "spirit of the law" as stated in § 578 and preserved the contested jury instructions for appellate review. Id. We find that by requesting the jury instructions at issue on the record and engaging in oral arguments before the trial court, the School District informed the trial court of its objections, thus properly preserving its objections to the jury instructions on appeal.

¶33 Based on our review of the record, the three jury instructions at issue, and the resulting jury verdict, we find that the trial court's denial of the School District's requested jury instructions does not constitute reversible error, and that the trial court properly instructed the jury on all relevant issues presented at trial. It does not appear that the lack of instructions on intervening cause, GTCA § 155 exemptions, and punitive damages caused a "miscarriage of justice" or "led to a different verdict that would have been rendered but for the alleged error." Nail By and Through Nail v. Okla. Children's Mem'l Hosp., 1985 OK at ¶ 11, 710 P.2d at 759. Accordingly, we affirm the trial court's denial of the School District's requested instructions.

1. Jury Instructions on Intervening Cause

¶34 The School District has alleged on appeal that the trial court committed reversible error by denying the School District's requested jury instruction on intervening cause. Specifically, the School District contended that the trial court's failure to instruct the jury that it could find B.B.'s conduct broke the chain of causation between the School District's alleged negligence and Brown's resulting injury misled the jury which "very likely led to a different verdict than it would have rendered." We, however, find that the lack of instruction on intervening cause did not result in a "miscarriage of justice" or affect the jury verdict to the extent that a different verdict would have been rendered but for the exclusion of the instruction on intervening cause. The trial court's inclusion of jury instructions on the issues on "Direct Cause,[3]" "Concurrent Causes[4]," and "Comparative Negligence[5]" each properly informed the jury how to break down the chain of causation to determine the roles of the School District (specifically Principal Page and Superintendent Flanagan), Boshers, and B.B. in causing Brown's resulting injuries.

¶35 As stated above, the foreseeability of an "intervening cause" is integral to discerning the causal nexus of a negligent act. Lockhart v. Loosen, 1997 OK at ¶ 10, 943 P.2d at 1079, as corrected (Aug. 21, 1997). Thus, even in the case where an intervening actor contributed to the resulting injury, "the chain of causation extending from the original act to the injury is not broken by the independent intervening agency" where the intervening cause is foreseeable, and the original negligent act remains the proximate cause of the injury. Runyon v. Reid, 1973 OK 25, ¶ 35, 510 P.2d 943, 948.

¶36 Upon receiving clear instruction on the role of foreseeability when making a finding of negligence, the jury concluded that B.B.'s conduct was foreseeable to the School District and served as a concurrent cause in Brown's resulting injuries. Thus, even had the jury received specific instruction on "intervening/supervening cause," the verdict would have remained the same, as the foreseeability of B.B.'s actions negated the School District's contention that B.B.'s assault of Brown broke the causal connection between the School District's negligence and Brown's injuries. Accordingly, the trial court's denial of the School District's requested instructions on intervening/supervening cause does not rise to the high bar of "reversible error."

2. Jury Instructions on Oklahoma GTCA Exemptions from Liability Under 51 O.S. § 155(4), (5), and (29)

¶37 The School District has further alleged that the trial court committed reversible error by denying School District's request for jury instructions on the 51 O.S. § 155 exemptions from liability. Of the GTCA § 155 exemptions, the School District specifically requested instructions on: (1) Failure to Adopt or Enforce a Policy, 51 O.S. § 155(4); (2) Discretionary Functions, 51 O.S. § 155(5); and (3) Acts/Omissions in the Placement of Children, 51 O.S. § 155(29). Based on our review of the record, we find no error in the trial court's denial of the School District's requested instructions, as the absence of instructions on the three, § 155 exemptions did not mislead the jury or lead to a different verdict than the jury would have otherwise reached.

¶38 The School District's first requested jury instruction dealt with the § 155(4) exemption from liability resulting from the "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." 51 O.S. § 155(4). The School District alleged on appeal that Brown's repeated emphasis on the School District's "adoption or non-adoption of policies on various topics" necessarily implicated this exemption, maintaining there was a "high likelihood" that the jury rendered a different decision due to their lack of instruction on the § 155(4) exemption. We, however, find the School District has read § 155(4) too broadly. Although the School District's decision to enforce or not to enforce a particular bullying policy is protected by § 155(4), once the School District made the decision to enforce the policy, it must do so in a manner consistent with the applicable standard of care. J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty., 2021 OK CIV APP 34, ¶ 39, 500 P.3d 649, 659. While Brown admittedly made reference to the alleged lack of a clear anti-bullying policy, most of Brown's evidence was focused on Principal Page and Superintendent Flanagan's lack of compliance with existing policy. Thus, even had the jury believed the School District could be held liable for its non-adoption of certain policy, we do not find this rose to the level of causing the jury to reach a different verdict had it received instruction on the § 155(4) exemption from liability.

¶39 The School District's second requested jury instruction dealt with the § 155(5) exemption from liability resulting from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." 51 O.S. § 155(5). The School District has argued that this "discretionary functions exemption" precluded the School District from liability resulting from any policy decision related to training and supervision of School District employees. We find, however, that the School District has, again, read the exemption too broadly, which is directly at odds with the Oklahoma Supreme Court's holding that the "discretionary function exemption from governmental tort liability is extremely limited." Nguyen v. State, 1990 OK 21, ¶ 4, 788 P.2d 962, 964. Although a state entity "retains its immunity with respect to formulation of policy," the state entity remains subject to liability "for routine decisions and daily implementation of the policy or planning level decisions." State ex rel. Oklahoma Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 10, 238 P.3d 1, 3 (citing Nguyen v. State, 1990 OK 21, ¶ 5, 788 P.2d 962, 965. Accordingly, while the § 155(5) exemption applies to the School District's policymaking and planning decisions, the exemption does not apply to the School District employees' negligent performance of policy. Randell v. Tulsa Indep. Sch. Dist. No. 1, 1994 OK CIV APP 156, 889 P.2d 1264, 1267. We, therefore, find the trial court's denial of jury instruction on § 155(5) exemption does constitute reversible error.

¶40 The School District's third and final requested jury instruction dealt with the § 155(29) exemption from liability resulting from "any claim based upon an act or omission of an employee in the placement of children." 51 O.S. § 155(29). The School District specifically contended that Brown's attorney elicited testimony related to Principal Page's alleged refusal to place B.B. and Brown in different lunch periods prior to the September 29th physical altercation, thus suggesting that the jury could impose liability on the School District for allegedly failing to switch B.B.'s lunch hour. The School District maintained that § 155(29) precludes liability resulting from the School District's placement of the two students in the same lunchroom, but cites to no case law supporting its contention. Presumably, the lack of case law can be attributed to the fact that § 155(29) has only been applied to exempt the Department of Human Services from tort liability resulting from the placement of children in the custody of a third-party. We find no error in the trial court's decision to deny the School District's request to instruct the jury on § 155(29) exemptions. Accordingly, the trial court's denial of the requested instructions is affirmed.

3. Jury Instructions on Punitive Damages

¶41 In its final allegation of error concerning jury instructions, the School District has alleged the trial court erred by denying the School District's requested instruction on punitive damages. More specifically, the School District argued that, while Brown did not assert a claim for punitive damages in the instant case, the trial court committed reversible error by not explicitly informing the jury that, pursuant to 51 O.S. § 154(C),[6] punitive damages cannot be awarded against a political subdivision such as the School District. The School District maintained that, due to the lack of instructions on the unavailability of punitive damages, the jury rendered a verdict that was "so disproportionate to Brown's damages it is apparent that the jury's award of damages was intended to punish the School District, not to compensate Brown for the injuries he actually incurred," thereby constituting reversible error. We disagree, and find that the trial court's denial of instructions on punitive damages -- an issue which was never before the jury to begin with -- did not rise to the level of a "miscarriage of justice," nor did it mislead the jury to the extent that the amount of damages would have been different but for the inclusion of instructions on punitive damages.

¶42 Broad discretion is given to a jury to determine the amount of damages. Fowler v. Lincoln Cnty. Conservation Dist., 2000 OK 96, ¶ 18, 15 P.3d 502, 508. For this Court to set aside a jury verdict for either excessiveness or inadequacy of damages, the party alleging error in the jury's award of damages must make a clear showing of prejudice. Fox v. Crowgey, 2015 OK CIV APP 23, ¶ 31, 346 P.3d 425, 432--33 (citing Clark v. Bearden, 1995 OK 71, ¶ 11, 903 P.2d 309, 312). The School District insisted that the jury was misled to believe that punishment of the School District was an appropriate basis for its award of damages due to Brown's closing arguments,[7] which the School District contended was "designed to inflame the emotions of [the] jury and suggest that the jury should punish the School District for failing to prevent altercation between [Brown] and B.B." Based upon our review of the trial transcript, we do not find Brown's arguments reached the point of suggesting the School District employees were guilty of acting with a "reckless disregard for the rights of others," nor do we find Brown somehow implied the jury should award damages meant to punish the School District. Further, the inclusion of jury instructions titled "Personal Injures -- Adults" provided the jury with a limited set of factors to consider when determining an award of damages -- none of which suggested punishment of the School District's conduct was an appropriate basis for awarding damages.

¶43 Beyond general speculation as to what influenced the jury's ultimate award of damages, the School District has not supported its allegation of "reversible error" with sufficient evidence to demonstrate the jury was misled to believe it could award damages intended to punish the School District. Where a jury's award of damages is within the limits of the evidence, we will not invade the jury's province and substitute our judgment as a fact-finding tribunal." B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 20, 114 P.3d 1082, 1087, as corrected (Feb. 18, 2005). We find the record contains competent evidence supporting the jury's award of damages to Brown, and that the lack of explicit instructions regarding the unavailability of punitive damages did not result in a different jury verdict than would have been reached had the jury received these specific instructions. Accordingly, we find the trial court's denial the School District's request for jury instructions on punitive damages did not rise to the level of reversible error.

C. Whether the trial court erred in its award of damages, costs, and fees. 

¶44 The School District has additionally alleged error with regard to the trial court's award of damages and costs, including: (1) the application of the UCATA offset prior to the remitter of damages to the GTCA cap of $125,000.00 pursuant to 51 O.S. § 154(A)(2); (2) the award of $16,061.74 for expert witness costs under 70 O.S. § 6-149.5 (the School Protection Act); and (3) the award for expert witness costs in excess of the GTCA cap. In addition, Brown has also alleged error with regard to the trial court's award of damages in his counter appeal, contending the trial court erred in its denial of Brown's request for attorney's fees under 70 O.S. § 6-149.5 of the SPA. As both the School District and Brown alleged error with regard to the trial court's application of § 6-149.5 of the SPA, we will consider both parties' allegations of error in tandem.

1. Application of UCATA Offset Prior to Remitter of Damages to the GTCA Cap.

¶45 The School District has argued that the trial court erroneously applied the UCATA offset prior to limiting the total amount of damages to the GTCA § 154(A)(2) cap of $125,000.00. More specifically, the School District insisted the correct award of damages to Brown should have been $80,000 rather than $125,000.00, stressing that the trial court should have first remitted the jury's $177,119.16 award of damages to Brown to $125,000.00, followed second by the application of the UCATA offset based upon Brown's $45,000 settlement agreement with Boshers, consequently reaching this $80,000 damages figure. The School District's argument, however, is directly contrary to existing legal authority and we, therefore, find no error in the sequence by which the trial court applied the UCATA offset followed by the remittitur of damages to the GTCA cap of $125,000.00.

¶46 In accordance with 51 O.S. § 154(A)(2), where a claim against a state entity arose out of "a single act, accident, or occurrence," a claimant's recovery of damages is subject to the statutory cap of $125,000.00. The School District's argument, in essence, is that a jury could only find it liable for damages up to this $125,000.00 figure (if 100% liable), and that any offset based on contributory negligence and/or a prior settlement agreement with a contributing tortfeasor must be deducted from, at most, this $125,000.00 cap on liability. The Oklahoma Supreme Court has previously rejected a nearly identical argument, making clear that the statute "merely set a cap on the amount to be paid to any claimant by the political subdivision," but does not "set limit on the amount of damages the jury could find." Thomas v. City of Tulsa, 1988 OK 138, ¶ 6, 766 P.2d 339, 340. The Court went on to hold that, in a contributory negligence case, there was nothing in the GTCA which limits a plaintiff's recovery to only a percentage of the § 154(A)(2) cap, and that the plaintiff was entitled to her percentage of total recovery of damages. Id. at ¶ 8. In a more recent case interpreting the § 154(A)(2) offset, the Oklahoma Supreme Court reiterated its holding in Thomas, similarly rejecting a tortfeasor's request to use the GTCA cap as the reference point to reduce damages rather than the tortfeasor's portion of total damages. Gowens v. Barstow, 2015 OK 85, 364 P.3d 644 (2015) ("[p]ursuant to Thomas, there would be no reduction in damages from the cap and the damages would therefore be equal to $125,000.00.").

¶47 We, therefore, find the trial court properly applied the UCATA offset prior to remitting the School District's total damages to the § 154(A)(2) GTCA cap of $125,000.00. As we find no error in the trial court's sequence of applying the UCATA offset followed by the GTCA cap, the trial court's award of damages in the amount of $125,000.00 is affirmed.

2. Applicability of the School Protection Act & Award of Attorney's Fees and Costs in Excess of the GTCA Cap on Liability

¶48 In addition to the trial court's award of damages to Brown in the amount of $125,000.00, the trial court also awarded Brown $16,061.74 in costs under the School Protection Act, while also denying Brown's request for attorney's fees via the SPA. Both the School District and Brown have alleged error with regard to the trial court's interpretation and application of the SPA, found in 70 O.S. § 6-149.5(A). The School District alleged the trial court erred both by applying the SPA in contravention to the statute's intended purpose, as well as awarding fees which exceeded the statutory cap of $125,000.00 in 51 O.S. § 154(A)(2). In his counter appeal, Brown alleged the trial court wrongfully denied Brown's request for attorney's fees pursuant to the SPA. While both parties ask this Court to interpret the application of 70 O.S. § 6-149.5(A), we find that the instant appeal does not necessitate a statutory probe of the SPA, as we conclude the trial court erred by awarding Brown attorney's fees in excess of the 51 O.S. § 154(A)(2) cap on total liability. Accordingly, the trial court's award of costs is reversed and vacated, and the trial court's denial of Brown's request for attorney's fees is affirmed.

¶49 In a GTCA action, Oklahoma case law is clear that a party's total recovery from a state entity cannot exceed that of the statutory cap. Belletini v. State ex rel. Dep't of Transp., 1996 OK CIV APP 30, 920 P.2d 1067, 1071 (The Oklahoma GTCA "strictly limits a governmental entity's tort liability" to the applicable statutory cap). As established above, the statutory cap in the instant case is $125,000.00 pursuant to 51 O.S. § 154(A)(2). As a result, Brown's award of damages in the amount of $125,000.00 reaches the uppermost boundary of damages available under § 154(A)(2). Any additional award, whether in the form of attorney's fees or expert costs, would therefore "impermissibly exceed[] the statutory limit on total recovery against the State." Truelock v. City of Del City, 1998 OK 64, ¶ 16, 967 P.2d 1183, 1188 (citing Huff v. State, 1988 OK 118, ¶ 12, 764 P.2d 183, 188).

¶50 Notwithstanding the disputed application of the SPA (which this Opinion makes no interpretation thereof), we find the trial court erroneously awarded expert costs to Brown in excess of the $125,000.00 statutory cap in 51 O.S. § 154(A)(2). The trial court's award of expert costs in the amount of $16,061.74 is, therefore, vacated, leaving Brown's total award of damages at the statutory maximum of $125,000.00. The trial court's denial of Brown's request for attorney's fees is affirmed based upon the same statutory limitation precluding any award in excess of the GTCA statutory cap.

CONCLUSION

¶51 Based upon the foregoing analysis, we find the trial court properly denied both the School District's Directed Verdict and requested jury instructions at issue. We also find that, while the trial court award of damages in the amount of $125,000.00 was correct, the trial court erred in its award of expert costs to Brown in excess of the $125,000.00 cap on liability was improper. For that reason, we affirm the trial court's judgment in part as to the $125,000.00 award of damages to Brown, while we vacate the judgment in part as to the $16,061.74 award of expert costs to Brown.

SWINTON, P.J., and BELL, V.C.J., concur.

FOOTNOTES

[1] The School District additionally alleged error concerning the trial court's dismissal of its May 28, 2021 Motion for Summary Judgment, which will not be considered in this Opinion. The School District failed to include the trial court's Order denying the School District's Motion for Summary Judgment, and we will not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court. Chamberlin v. Chamberlin, 1986 OK 30, ¶ 4, 720 P.2d 721, 723. Further, a denial of a motion for summary judgment may not be reviewed on appeal following trial. Myers v. Missouri Pacific R. Co., 2002 OK 60, ¶ 39, 52 P.3d 1014, 1034.

Additionally, the School District noted in its Br.-in-Chief that it was no longer pursuing three of the fifteen (15) issues it asserted in its Petition in Error., which were related to: (1) jury instructions related to the measure of Brown's damages; (2) jury instructions related to waiver of Brown's arguments which were not submitted in his initial notice of tort claim; and (3) whether the jury's findings related to emotional distress/mental anguish were supported by competent evidence.

[2] "A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to. Provided, further, that the court shall furnish copies of the instructions to the plaintiff and defendant prior to the time said instructions are given by the court." 12 O.S. § 578.

[3] "Direct cause means a cause which, in the natural and continuous sequence, produces injury and without which the injury would not have happened. For negligence to be a direct cause it is necessary that some injury to a person or to the property of a person in Plaintiff's situation must have been a reasonably foreseeable result of negligence." Instruction No. 9.6, O.U.J.I. 3d (OSCN) (emphasis added).

[4] "There may be more than one direct cause of an injury. When an injury is the result of the combined negligence of two or more persons, the conduct of each person is the direct cause of the injury regardless of the extent to which each contributes to the injury." Instruction No. 9.7, O.U.J.I. 3d (OSCN).

[5] "As a part of its defense, the School District first denies that any negligence on its part was the direct cause of the occurrence involved in this lawsuit and any resulting injuries to Plaintiff. [...] The School District contends that the negligence of Julie Boshers and/or [B.B.], who are not parties, to this lawsuit but about whom you have heard testimony in this trial, was the direct cause of the occurrence, or at least had some causal connection with it." Instruction No. 9.21, O.U.J.I. 3d (OSCN).

[6] "No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages." 51 O.S. § 154(C).

[7] The singular statement which the School District has alleged was intended to insinuate the jury could enter a verdict designed to punish the School District is, as follows: "[t]his isn't just about keeping George Brown safe. This is about keeping students in general safe with policies and things they have," and "[y]ou can make sure that this doesn't happen and that somebody doesn't get hurt."

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1994 OK CIV APP 156, 889 P.2d 1264, 66 OBJ 625, 
Randell v. Tulsa Independent School Dist. No. 1
Discussed

 
2004 OK CIV APP 2, 83 P.3d 879, 
WORSHAM v. NIX
Discussed

 
2007 OK CIV APP 23, 158 P.3d 495, 
ESTRADA v. PORT CITY PROPERTIES, INC.
Discussed

 
1996 OK CIV APP 30, 920 P.2d 1067, 67 OBJ 2520, 
Belletini v. State ex rel. Dept. of Transp.
Discussed

 
2012 OK CIV APP 109, 292 P.3d 41, 
BREWER v. MURRAY
Discussed

 
2015 OK CIV APP 23, 346 P.3d 425, 
FOX v. CROWGEY
Discussed

 
2018 OK CIV APP 71, 431 P.3d 366, 
LE v. TOTAL QUALITY LOGISTICS
Discussed

 
2021 OK CIV APP 34, 500 P.3d 649, 
J.W. v. INDEPENDENT SCHOOL DISTRICT NO. 10 of DEWEY COUNTY
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 118, 764 P.2d 183, 59 OBJ 2931, 
Huff v. State
Discussed

 
1988 OK 120, 764 P.2d 189, 59 OBJ 2953, 
Cook v. Bishop
Discussed

 
1988 OK 138, 766 P.2d 339, 59 OBJ 3466, 
Thomas v. City of Tulsa
Discussed

 
2000 OK 96, 15 P.3d 502, 71 OBJ 3232, 
FOWLER v. LINCOLN COUNTY CONSERVATION DIST.
Discussed

 
1990 OK 21, 788 P.2d 962, 61 OBJ 674, 
Nguyen v. State
Discussed at Length

 
1991 OK 104, 818 P.2d 901, 62 OBJ 3111, 
Cimarron Feeders, Inc. v. Tri- County Elec. Coop., Inc.
Discussed

 
1938 OK 474, 83 P.2d 189, 183 Okla. 450, 
CITY OF OKMULGEE v. HEMPHILL
Discussed at Length

 
2000 OK 79, 19 P.3d 834, 72 OBJ 639, 
FRANKLIN v. TOAL
Discussed

 
1997 OK 103, 943 P.2d 1074, 68 OBJ 2550, 
LOCKHART v. LOOSEN
Discussed

 
2001 OK 41, 24 P.3d 858, 72 OBJ 1495, 
GILLHAM v. LAKE COUNTRY RACEWAY
Discussed at Length

 
2001 OK 71, 33 P.3d 302, 72 OBJ 2703, 
SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed

 
2001 OK 76, 37 P.3d 783, 72 OBJ 2725, 
STROUD v. ARTHUR ANDERSEN & CO.
Discussed

 
1999 OK 88, 998 P.2d 592, 70 OBJ 3260, 
N.H. v. Presbyterian Church (U.S.A.)
Discussed

 
1966 OK 34, 411 P.2d 521, 
CITY OF HOLDENVILLE v. GRIGGS
Discussed

 
1966 OK 65, 413 P.2d 522, 
GREEN v. SELLERS
Discussed

 
2002 OK 60, 52 P.3d 1014, 
MYERS v. MISSOURI PACIFIC RAILROAD CO.
Discussed at Length

 
1995 OK 71, 903 P.2d 309, 66 OBJ 2139, 
Clark v. Bearden
Discussed

 
1970 OK 157, 474 P.2d 403, 
THUR v. DUNKLEY
Discussed

 
1995 OK 109, 905 P.2d 790, 66 OBJ 3299, 
Death of Lofton v. Green
Discussed

 
1995 OK 131, 907 P.2d 1067, 66 OBJ 3765, 
Jackson v. Jones
Discussed

 
1973 OK 25, 510 P.2d 943, 
RUNYON v. REID
Discussed at Length

 
1973 OK 72, 512 P.2d 113, 
PARK v. SECURITY BANK AND TRUST COMPANY
Discussed

 
2002 OK 76, 60 P.3d 497, 
IGLEHART v. BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY
Discussed

 
2003 OK 96, 81 P.3d 652, 
FULSOM v. FULSOM
Discussed

 
2005 OK 8, 114 P.3d 1082, 
B-STAR, INC. v. POLYONE CORPORATION
Discussed

 
2007 OK 2, 154 P.3d 1250, 
ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.
Discussed

 
2007 OK 81, 173 P.3d 64, 
WYLIE v. CHESSER
Discussed

 
2008 OK 70, 188 P.3d 158, 
SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed

 
2008 OK 99, 203 P.3d 173, 
SPEIGHT v. PRESLEY
Discussed

 
2010 OK 56, 238 P.3d 1, 
STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY v. GURICH
Discussed

 
2015 OK 56, 352 P.3d 1223, 
FARGO v. HAYS-KUEHN
Discussed

 
2015 OK 85, 364 P.3d 644, 
GOWENS v. BARSTOW
Discussed

 
2018 OK 21, 415 P.3d 43, 
BENEDETTI v. CIMAREX ENERGY COMPANY
Discussed

 
2022 OK 50, 510 P.3d 845, 
BAILEY v. STATE ex rel. BD. OF TESTS FOR ALCOHOL AND DRUG INFLUENCE
Discussed

 
1981 OK 15, 624 P.2d 1056, 
Cantrell v. Henthorn
Discussed

 
1997 OK 137, 948 P.2d 298, 68 OBJ 3603, 
HARDER v. F.C. CLINTON, INC.
Discussed

 
1998 OK 64, 967 P.2d 1183, 69 OBJ 2402, 
TRUELOCK v. DEL CITY
Discussed

 
1985 OK 101, 710 P.2d 755, 
Nail By and Through Nail v. Oklahoma Children's Memorial Hosp.
Discussed

 
1986 OK 28, 747 P.2d 266, 57 OBJ 1331, 
ABC Coating Co., Inc. v. J. Harris & Sons Ltd.
Discussed

 
1986 OK 30, 720 P.2d 721, 57 OBJ 1415, 
Chamberlin v. Chamberlin
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 578, 
Exceptions to Instructions - Copies to Parties
Discussed

 
12 O.S. 832, 
Joint Tort-Feasors - Contribution - Indemnity - Exemptions
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 154, 
Extent of Liability
Discussed at Length

 
51 O.S. 155, 
Exemptions From Liability
Discussed at Length

 
51 O.S. 152, 
Definitions
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA